# MICHAEL CUMMINGS *vs.* NATIONAL & PROVIDENCE WORSTED MILLS.

## PROVIDENCE—JULY 31, 1902.

PRESENT : Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Master and Servant. Negligence. Improper Appliances.*

Plaintiff, a servant in employ of defendant, was injured by the breaking of a belt. The belt was traveling two thousand feet per minute, and parted at a joint which had been made by defendant by cementing two ends together. Defendant's workman who mended the belt testified that he knew nothing of the quality of the cement which he used. It appeared that cemented joints were in general use in mills, yet such joints, when made by belt manufacturers, were united by hydraulic pressure ; whereas, in the case at bar, the ends were trimmed, laid together with cement between them, placed between two boards while still upon the shafting, secured by a few nails, and allowed to remain over night. The atmosphere in the room was artificially moistened, to enable the operatives to spin to better advantage, which had a tendency to loosen such cemented joints.

The belt was carrying no load at the time, and was subjected to only about one-twentieth of the strain it was designed to bear. Defendant's workmen further testified that the joints made by the manufacturers were better made, and should hold better :—

*Held,* that the defendant, having assumed to manufacture its own cement and mend its own belts, was bound to know not only the quality of the cement and the proper proportion of its elements, but, having that knowledge, was also bound to apply the cement in such a manner as should make the belts reasonably safe.

*Held,* further, that the method employed by defendant was condemned by its own witnesses, and a verdict for plaintiff should be sustained.

(2) *Damages. Negligence.*

Where plaintiff, fifty-one years of age, earning $1,000 per year, was totally incapacitated from any labor, losing the sight of one eye, with the probability of total loss of sight in the near future, a verdict of $12,500 is not excessive.

TRESPASS ON THE CASE for negligence. Heard on petition of defendant for new trial. New trial denied.

BLODGETT, J. The grounds on which the petition for a new trial in this case are based are that the verdict was against the

law and the evidence, and that the damages awarded are excessive.

(1)    As to the first ground, it appears that the plaintiff, a carpenter in the employ of the defendant, was upon his knees and engaged in repairing the floor in the spinning-room.    While so engaged, a belt connecting shafting attached to the ceiling parted suddenly and without warning, and an end struck him in the eyes with a force sufficient to break the glasses which he wore, driving the glasses into his eyes and displacing the interior parts of both eyes, causing the entire loss of sight in one eye and the loss of distinct vision in the other even at the distance of a few inches, with the probability, according to the undisputed medical testimony, of total blindness in the near future.

The testimony shows that the belt was more than seventy feet in length, and was on a pulley revolving two hundred and fourteen times per minute, and was traveling two thousand feet per minute, and parted at a joint which had been made by the defendant company by cementing two ends together.    The defendant's workman who mended the belt testifies that he knew nothing of the quality of the cement which he used ; and while it appears that cemented joints are in general use in mills, yet such joints when made by belt manufacturers are united by hydraulic pressure, whereas in the case at bar the ends were trimmed, laid together with cement between them, placed between two boards while still upon the shafting, secured by a few nails and allowed to remain over night.    The testimony also shows the atmosphere in this room was artificially moistened to enable the operatives to spin to better advantage, and that the tendency of all moisture is to loosen such cemented joints.    From the fact, which we think the evidence clearly shows, that the belt was carrying no load, but was running on a loose pulley at the time of the accident, and according to the defendant's testimony was then subjected to only about one-twentieth of the strain it was designed to bear, we think the evidence of negligence is increased.

It appears from the testimony of the defendant's manager, Mr. Hoye, that the cement in question was made at the mill

and had been changed from the cement theretofore used therein; and the defendant's witness, Rowen, who formerly mixed their cement, testifies as follows:

"C. Q. 167. What would you say was the quality of the glue in the joints they made there that broke and gave way, and in the joints that came from the factory and didn't give way; have the same strength? A. I cannot say. C. Q. 168. Would the glue be better than they used in the factory? A. I cannot say; might be the same glue put together wrong and have the same result." And the defendant's witness, Chadwick, the overseer of the mill, testifies: "C. Q. 143. What you mean to say about the factory joints, Mr. Chadwick, is, they crowd it down so under hydraulic pressure, harder than you can, that it isn't humped up or lumped anywhere; it is smoother? A. They can do this splicing down smoother and cement them always better themselves than we would. C. Q. 144. They are a more even joint than yours? A. Yes sir. C. Q. 145. Do they hold better? A. They ought to." And the defendant's witness, Mr. Jackson, the superintendent of the mill, testifies, C. Q. 101: "How can you tell a lap that was made in the mill from a factory lap? A. They are much nicer made. C. Q. 102. Which is much nicer made? A. The manufacturer's lap. C. Q. 103. They are made better? A. Yes sir. C. Q. 104. They will hold better? A. They ought to."

The company, having assumed to manufacture its own cement and mend its own belts in this manner, was bound to know not only the quality of the cement it used and its constituent elements and their proper proportions, but was also bound, having that knowledge, to apply that cement in such a manner as should make the belts reasonably safe; and, failing in this, they must respond in damages if injury occurs thereby.

As to the propriety in nailing the cemented ends of a belt together between two boards, the testimony of the defendant's overseer, Chadwick, is as follows: "C. Q. 184. What instructions did you give them about nailing the belt together while the cement was setting? A. They never nailed a joint

there in that room ; if they did, it was contrary to orders.  C. Q. 185.   What orders did you give ?   A. My orders was in case of the breaking of any belt they could drive a nail this side of the splice—two nails here and two here (indicating)—that was in order to keep them from stirring from one side to the other ; they was then taken down, so fashion (indicating), rubbed down and clamped.  C. Q. 186.   Clamped ?   A. Yes sir."

In *McGarr* v. *National & Providence Worsted Mills*, 22 R. I. 347, which was also an action against this defendant, resulting from the parting of a belt, we said :   "We agree with the position taken by the defendant that the employer does not undertake that he will adopt the latest and best appliances, or that he is to be cast in damages for error of judgment in selecting one kind of machinery or appliance on proof that another kind is better or safer when both kinds are in common use.   This doctrine is in accord with our own reported decisions.   See the late case of *Disano* v. *Brick Co.*, 20 R. I. 452.  But the appliance here used, if it was constructed as the plaintiff's witnesses testify, is positively condemned by the defendant's own witnesses and shown not to be in common use in well-regulated and well-managed establishments ; and hence we fail to see the pertinency of the doctrine as applied in this case."   And these observations are equally applicable to the case at bar.

(2)   The amount of the verdict is $12,500;  and while this is large, yet we cannot say that it is excessive.   The plaintiff was fifty-one years of age at the time of the accident, and was earning $1,000 per year, and is totally incapacitated from any labor ; and this amount is hardly more than compensatory damages for his years of reasonable expectation of active labor, while his pain and suffering are not to be described.

Petition for new trial denied.

*John W. Hogan*, for plaintiff.
*Walter B. Vincent*, for defendant.