WYSOCKI, by guardian *ad litem*, Respondent, vs. WISCONSIN
LAKES ICE & CARTAGE COMPANY, Appellant.

*February 27—March 22, 1904.*

*Master and servant: Injury by vicious horse: Vice-principal or co-*
*employee?   Evidence of authority: Impeachment of witnesses:*
*Improper remarks of counsel: Instructions to jury: Excessive*
*damages.*

1. In an action for injuries to a boy employed by an ice company,
   caused by the kick of a vicious horse which he had been di-
   rected by one G., another employee, to hitch to a cart for the
   purpose of hauling ice, the evidence is *held* to sustain a find-
   ing in the special verdict that G. had authority to represent
   the company in designating the particular horse to be used in
   the work.
2. Upon the question whether G. had such authority, evidence that
   employees consulted him as to their duties and the repair of
   instruments was admissible.
3. It being the duty of the company to furnish only reasonably safe
   horses to be used by its employees in its business, and it ap-
   pearing that the horse in question was vicious and had a pro-
   pensity to kick persons, that such propensity was known to G.
   before the accident, and that in respect to this matter G. was
   not a mere co-employee of plaintiff, but was a vice principal,
   charged with performance of the master's duty, the company
   is responsible for the consequences of G.'s want of ordinary
   care in that regard.
4. To permit an impeaching witness to be asked whether the wit-
   ness sought to be impeached used certain particular language
   out of court, "or words of like meaning," was not error, on the
   ground that it made the witness the judge as to whether the
   words used were of "like meaning," since by cross-examination
   the opposing party might ascertain the precise words used.
5. Remarks of counsel in commenting to the jury upon the evi-
   dence are *held*, though technically objectionable, not to have
   been prejudicial.
6. For the trial court to state that instructions are given at the
   request of one party or the other, though not ordinarily ground
   for reversal, is not advisable practice.

7. For the total loss of one eye and impairment of the other and injury to bones of the face, forehead, and skull, leaving an unevenness of surface, necessitating removal of a part of the bone covering the brain, and causing continued pain and discomfort, an award of $8,500 is *held* not excessive.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed*.

This action was brought to recover damages for a personal injury. Appellant is a corporation engaged in cutting, storing, delivering, and selling ice in the city of Milwaukee, and had been so engaged for a number of years prior to the alleged injury. Respondent was a servant of appellant, working in and about its icehouse. At the time of the injury he was fourteen years of age. On July 28, 1900, he was directed by one of appellant's employees to harness and hitch one of its horses to haul slush ice from the icehouse. He harnessed the horse as directed, and, when about to grasp the lines in order to drive the horse to the cart, it kicked him, striking him in the face and causing the loss of an eye and other serious injury to his head and face. It is alleged that appellant failed in its duty of providing him with a safe horse, as an appliance wherewith to do his work, in that the horse named "Nigger" was vicious and had a propensity to kick, making him dangerous and unsafe to use in appellant's business. Respondent had no notice of, nor was he warned of, its vicious and dangerous propensities and unsafe condition. Upon these grounds it is claimed that appellant was careless in providing him with this horse.

The jury, by special verdict, found the following facts: The respondent was injured by the kick of appellant's horse while in its employ. Ben Germershausen, an employee of appellant, who directed respondent to harness and use this horse in hauling slush ice from the ice house, had authority from appellant to select the horse to be used in this work.

Germershausen knew prior to July 28, 1900, that the horse was vicious and had a propensity to kick at persons. The jury also found that before the accident this horse had a vicious disposition to kick at persons, which rendered him not reasonably safe to harness and use; that appellant, by the exercise of ordinary care, would have discovered this disposition of the horse before the accident happened; that want of ordinary care on appellant's part to furnish a reasonably safe horse was the proximate cause of the injury; and that respondent was not guilty of any want of ordinary care, contributing to the injury. They found that $8,500 would compensate respondent for his injuries. The court awarded judgment for this amount, with costs. From this judgment this appeal is taken.

*C. H. Van Alstine,* for the appellant, contended, *inter alia,* that after the master has furnished several horses for use in his business he does not owe to his servants a further implied duty to determine which of such horses his servants shall use. The selection of a horse from several already furnished by the master is clearly a detail of the work which may properly be delegated to a fellow servant without creating any liability on the part of the master. *Webber v. Piper,* 109 N. Y. 496, 499; *Van den Heuvel v. National F. Co.* 84 Wis. 636.

For the respondent there was a brief by *Casimir Gonski* and *Kronshage & McGovern,* attorneys, and *Oscar M. Fritz,* of counsel, and oral argument by *Mr. Gonski* and *Mr. Theo. Kronshage.*

SIEBECKER, J. Respondent, a boy fourteen years of age, was in appellant's employ at the time he was injured from the kick of one of the horses used in its business, and sustained serious injuries. It is not questioned but what appellant owed respondent the duty to exercise reasonable care in furnishing him a reasonably safe horse for his use in its

business. A vital question, under the facts of the case, is whether Ben Germershausen, one of the appellant's employees, had authority to act for it in directing respondent to use the horse designated by him in performing the duties imposed by the service. In awarding judgment, the court held that the answer to the third question in the special verdict, finding Germershausen had authority to represent appellant in designating the particular horse respondent should use in his service, is supported by the evidence. It is in proof that Germershausen had been in appellant's employ for a number of years, that he owned stock in the company, and that, as stated by the president of the company, he performed the service of keeping things in order in the absence of the officers and superintendent. At such time he directed other employees as to the service they were to perform, and superintended them in their work. He employed respondent, and on different occasions he employed other men for appellant. He testified, as to his duties, that he at times had charge of some of the men. On the morning of the day of this accident, none of the officers nor the superintendent in charge of the work at the icehouse and barn were present when respondent came to his work. Germershausen was there, and assumed the management of affairs in his usual way. Respondent testifies that he usually received his orders from Germershausen as to the particular work he was to do, and what horse to use. Other servants testify to the same effect as regards his hiring of employees, directing them in their work, and conducting appellant's business in the absence of the officers and superintendent, and particularly in directing the work and selecting the horses to be used in hoisting and in hauling ice and slush. It is not disputed that respondent was directed by Germershausen to harness and hitch the horse Nigger to a cart to haul slush ice at the time the injuries were sustained. The evidence bearing on the nature and the manner of conducting appellant's business

sustains the conclusion of the court that Germershausen was not a mere co-servant of respondent when he performed the service of conducting the business and directing the employees in carrying it on. In that service he was acting as the agent of his master, and performed the duties of his principal. He therefore stood in the place of appellant as regards the acts complained of. Any omission on his part in performing the duty owing to respondent under the circumstances is chargeable to the principal.

The evidence tends to show that Germershausen had been informed before the accident that the horse was vicious and had kicked at persons in appellant's service who harnessed and used him. Since Germershausen was appellant's agent in directing respondent to use the horse for the purpose indicated, his knowledge must be deemed the knowledge of the principal. Appellant could discharge its duty toward respondent by furnishing only safe and gentle horses to be used in its business. If a vicious and dangerous one was furnished, it must follow that the servant who is unfortunate enough to have the vicious and dangerous one assigned to him is dealt with as if no other horse were furnished and used in the master's business. The court properly awarded judgment on the verdict, on the grounds that the horse was vicious and had a propensity to kick at persons, that such propensity was known to Germershausen before the accident, and that he was not a co-employee of the respondent, but was a vice-principal as regards the transaction covered by the case. Upon this subject see the cases collected and cited in the opinions of *Dwyer v. Am. Exp. Co.* 82 Wis. 307, 52 N. W. 304; *Okonski v. Pennsylvania & Ohio F. Co.* 114 Wis. 448, 90 N. W. 429. The judgment must stand, unless the court committed error in some of the other exceptions argued.

It is urged that it was an error to put the questions to impeaching witnesses in the form giving the particular lan-

guage the witness is stated to have used out of court, and adding the words "or words of like meaning," or "words of similar import." This form of interrogatory calls for the words of the statement made, or giving them in substance. In the case of *Gould v. Norfolk L. Co.* 9 Cush. 338, it was held that an objection to the inquiry because not calling for the precise words of the statement of the witnesses sought to be impeached should not prevail if the witness called to impeach can state that which substantially contradicts the witness upon the trial. It is argued that this practice should not be sustained, because it makes the witness judge whether the words used by the witness sought to be impeached were of like meaning or import. The right of the opposing party to cross-examine the witness, and ascertain what the precise words of the statement in fact were, gives him opportunity to protect his rights in this regard.

The remarks of counsel in commenting on the evidence to the jury, in the words, "I don't recollect that Ben Germershausen testified that he had no information that the horse would kick," though technically objectionable, and though they might well have been omitted by counsel, cannot be held to have prejudiced the appellant's case before the jury. Nor do we find prejudicial remarks in other portions of the argument excepted to.

Exceptions are preserved to the admission of testimony, over appellant's objections, tending to show that employees consulted Germershausen concerning their duties and the repair of instruments used by them in their service. We find no error in the ruling.

. A large number of requests for instructions were submitted by appellant. The court gave some of these, and rejected others. We have examined those rejected and those given by the court, and find the instructions given by the court fully cover and embody the rules of law applicable to the case. The practice of the trial court in characterizing the instruc-

tions requested by one party or the other, though not ordinarily deemed to be grounds, for reversible error, is not advisable, and the court should not make a distinction between instructions originating with the court and those presented by either counsel. See *Gutzman v. Clancy,* 114 Wis. 589, 90 N. W. 1081.

The verdict is assailed upon the ground that the damages were excessive. The evidence as to the nature and extent of the injuries sustained is to the effect that there is a total loss of one eye, and some impairment of the other; that bones of the face, forehead, and skull were injured, and left an unevenness of the surface. A part of the bone covering the brain had to be removed, leaving the brain without natural protection over this area. The injuries were very painful, and still cause pain and much discomfort. Upon these facts as to the nature and extent of the injury, we cannot say that the jury awarded an excessive amount as damages.

We find no error in the record upon which judgment should be reversed.

*By the Court.*—Judgment of the circuit court is affirmed.