COOLIDGE, Respondent, vs. HALLAUER, Appellant.

*October 27—November 14, 1905.*

*Master and servant: Defective machinery: Injury to servant: Assumption of risk: Reliance on promise to repair: Court and jury: Proximate cause: Special verdict construed: Examination of jurors: Improper remarks of counsel: Appeal: Matters considered.*

1. When a master promises to repair a defective machine and the servant continues to use it in reliance upon such promise, the latter is not chargeable with contributory negligence or assumption of risk unless he continues to use it longer than is reasonably necessary for the making of repairs under the circumstances, or unless the danger is so great, constant, and imminent that a person of ordinary prudence would not ordinarily consent to incur it even for a limited time necessary for the master with reasonable diligence to remove it.

2. Plaintiff operated for defendant a machine which sawed button blanks from clam shells. It was necessary, three or four times an hour, to joint the saw with a file, which he placed at the end of a pusher block and forced against the teeth of the saw as it revolved. The pusher became loose and plaintiff, during Saturday forenoon, notified defendant's foreman, who told plaintiff to go on with his work and that he would fix the machine as soon as he got time. Plaintiff operated the machine all day Saturday and about an hour on Monday, when, on attempting to joint the saw, it cramped the file, the pusher dropped down on account of its loose condition, and a piece of steel flew off and destroyed plaintiff's eye. The jury found that plaintiff's continued use of the machine, in reliance upon the promise to repair, was not for a longer time than was reasonable for the

making of repairs. *Held*, that it could not be said, as matter of law, that the danger was so great, imminent, and obvious that plaintiff, by continuing to use the machine at all, was negligent or assumed the risk; nor could it be said, as matter of law, that plaintiff had continued such use for more than a reasonable time in reliance upon the promise to repair.

3. The jury having found that the injury to plaintiff was the natural and probable result of the unsafe condition of the machine, a further finding that "such injury" ought to have been "foreseen" by a person of ordinary care and prudence is *held* not to mean that the precise injury actually suffered by plaintiff ought to have been apprehended as certain to occur, but merely that such an injury, or an injury of like nature, should have been apprehended or considered probable. It was a finding as to proximate cause, not a finding of contributory negligence.

4. To constitute proximate cause it is not necessary that the precise injury ought to have been foreseen or apprehended as certain to occur. It is sufficient if an ordinarily careful and prudent person ought, under the circumstances, to have foreseen that *an injury might probably* result from the negligent act.

5. What defendant's foreman said to plaintiff: "You go on with your work. I will fix your machine as soon as I get time," might fairly be considered as a promise to repair within a reasonable time; and the question whether it was such promise was one for the jury.

6. Plaintiff's counsel asked a juryman, on the *voir dire*, whether he had any relations with any of the officers of a certain insurance company, and upon objection to the question stated that he understood that company had indemnified defendant against loss and was conducting the defense. The court sustained the objection and directed the jury not to consider any statement which had been made in reference to the matter. *Held*, that no error was committed.

7. An assignment of error on the ground of excessive damages, not having been argued, is not considered.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries. The defendant owned and operated a pearl button factory at La Crosse, and at the time of the accident, March 14, 1904, the plaintiff, a man twenty-eight years of age, was an employee in the factory, and had been such for nearly three

years. He operated a machine propelled by line shafting, known as a Berry sawing machine, which cuts out the button blanks from clam shells. This machine is somewhat similar in appearance to an ordinary lathe, and operates on much the same principle. The operator stands in front of it. At his left hand and in front of him is the sawing part of the machine, and at his right hand the pusher or tailstock. The saw is cylindrical in form and set into a spool, and this spool is fastened into a chuck upon the end of a shaft, and this shaft revolves at a rate of from 400 to 500 revolutions per minute. This part of the machine is at the operator's left hand, and is, of course, connected by a band with the shafting. The pusher or tailstock is at the operator's right hand. The end of the pusher consists of a block inserted in a cylinder, connected with a screw, at the extreme outer end thereof, with a handle, which handle the operator grasps to adjust the distance which the block shall pursue from the cylinder. The cylinder holding the block is itself held in place by iron boxes. The machine is operated by placing the clam shell, which is held by the operator in his left hand, against the pusher, and by moving the pusher forward by means of a screw until the shell is forced against the teeth of the saw; the saw then perforates the shell, and the round blank thus cut off is forced into the cylindrical tube constituting the saw, and then passes down to some receptacle beneath the machine. In the operation of the machine the cylinder holding the block is liable to become loose from wear, and when so becoming loose the operator's duty is to cut away the pasteboard bushing in the boxes holding the cylinder, and screw up the screws upon the sides of the boxes tighter. After the bushing has all been cut away and the screws have been turned to their limit, if the cylinder becomes loose the machine is to be stopped, the boxes unscrewed, and new bushings put in by the foreman. In operating the machine it becomes necessary, about every fifteen or twenty minutes, to "joint the saw"—that is, to even the teeth,—and for

that purpose the operator places a three-cornered file at the end of the pusher block and forces it against the teeth of the saw until they are properly evened. The plaintiff's testimony tended to show that the plaintiff was operating his machine on Saturday, March 12, 1904, and that the tailpiece or pusher became loose in the boxes; that he had previously taken out all of the bushings from the boxes and turned down the screws as far as possible, and that he notified the foreman during the forenoon of that day that the pusher was loose and he could not work with it, and asked him to fix it; that the foreman said: "You go on with your work. I will fix your machine as soon as I get time;" that he went on with his work, relying upon the promise, and thinking that, if he was careful, he could operate the machine without danger; that he operated the same all day Saturday, and commenced to work again Monday morning, the machine not being repaired; that after working about an hour on Monday morning he proceeded to joint the saw, but as soon as he placed the file in position the saw cramped it, and the pusher dropped down on account of its loose condition and a piece of steel flew off and struck the plaintiff in the eye, resulting in its complete loss. The foreman denied that the plaintiff spoke to him about the machine, or that he made any promise to repair.

The jury returned the following special verdict:

"(1) Was the machine furnished by the defendant for the use of the plaintiff reasonably safe for such use on the 12th day of March, 1904? A. No. (2) If you answer the first question in the negative, then did the plaintiff on that day notify the defendant of its condition and protest against further use thereof? A. Yes. (3) If you answer the second question in the affirmative, then did the foreman of the defendant promise to repair the same? A. Yes. (4) If you answer the third question in the affirmative, then did the plaintiff continue the use of such machine up to the time of the accident, relying upon such promise? A. Yes. (5) Did the plaintiff sustain the injury of which he complains on the 14th day of March, 1904? A. Yes. (6) If you answer the

fourth question in the affirmative, then, under all the circumstances, did the plaintiff continue the use of the machine in question for a longer time than was reasonable to allow the defendant to repair the same? *A.* No. (7) If you answer the first question in the negative, then was the injury to the plaintiff the natural and probable result of the unsafe condition of such machine? *A.* Yes. (8) If you answer the seventh question in the affirmative, then, in the light of the attending circumstances, ought such injury to have been foreseen by a person of ordinary care and prudence? *A.* Yes. (9) Did the plaintiff fail to exercise any ordinary care which contributed to his injury? *A.* No. (10) If you find that the plaintiff was injured on the 14th day of March, 1904, then was such injury the result of a mere accident? *A.* No. (11) If the court shall finally determine that the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $7,000."

The defendant moved to set aside the fourth answer, and moved for judgment upon the verdict as amended, which motion was overruled, as was also a motion to set aside the verdict and for a new trial, and judgment was entered for the plaintiff upon the verdict, from which the defendant appeals.

For the appellant there was a brief by *Vilas, Vilas, Jenner & Freeman,* and oral argument by *E. P. Vilas* and *R. R. Freeman.*

For the respondent there was a brief by *Higbee & Higbee,* and oral argument by *E. C. Higbee.*

WINSLOW, J. The jury found by the special verdict that the machine was not reasonably safe for use, and that the plaintiff's injury was not a mere accident, but was the natural and probable result of such unsafe condition of the machine, and should have been foreseen by a person of ordinary care and prudence. If the verdict stopped here, it seems that a judgment for the defendant would necessarily follow, because the plaintiff well knew the defective condition of the machine; but the jury went further, and found that a promise to repair the machine had been made by defendant's foreman, and that

the plaintiff continued its use relying on that promise, that such continuance of use was not for a time longer than was reasonable for the making of repairs, and that the plaintiff was not guilty of contributory negligence.

The serious contentions made by the appellant relate to these last-named findings. The general rule that, when a master promises to repair a defective machine and the servant continues to use it in reliance upon such promise, he is not to be charged with contributory negligence or assumption of the risk unless he continues to use it for a longer time than is reasonably necessary for the making of repairs under the circumstances, is not questioned; but it is claimed, in the first place, that the present case comes within that well-understood exception to or limitation of the rule, sharply illustrated by the case of *Erdman v. Illinois S. Co.* 95 Wis. 6, 69 N. W. 993, where the danger is so obvious, imminent, and extraordinary that a person of ordinary care would not ordinarily consent to incur it for a moment, even under a promise of repair. That was the case of a cracked saw revolving at the rate of 1,700 revolutions per minute and sawing bars of steel, and the danger of its flying to pieces at any moment was imminent and obvious. No exercise of care could avoid the terrible danger, and there was no reasonable time within which the operative could wait for repairs and continue to use it. The proper scope of this rule has been several times considered by this court since the decision of the *Erdman Case.* *Maitland v. Gilbert P. Co.* 97 Wis. 476, 485, 72 N. W. 1124; *Curran v. A. H. Stange Co.* 98 Wis. 598, 605, 74 N. W. 377; *Yerkes v. N. P. R. Co.* 112 Wis. 184, 192, 88 N. W. 33. It has no application to cases where the danger is not so great, constant, and imminent but that a person of ordinary prudence would ordinarily subject himself to it for a limited time necessary for the master with reasonable diligence to remove it. We cannot regard the present case as being one where the court should say as matter of law that it is within

the rule of the *Erdman Case*. While there was danger con-
nected with the use of the machine in its defective condi-
tion, as the result shows, still it may well be that a person of
ordinary prudence would naturally think that by the exercise
of care he could safely operate the machine until repairs were
made. The only danger apparently to be anticipated was in
the use of the file in the jointing of the saw. It appears that
this had to be done three or four times an hour, and that it
was safely done for a large part of the day on Saturday, and
probably several times on Monday morning. It does not ap-
pear that the cramping of the file would necessarily take place
whenever the saw was jointed, nor that pieces of steel would
necessarily fly, even when the file cramped.

But, while we have had no difficulty in holding that the
evidence does not bring the case within the rule of the *Erdman
Case* as matter of law, we must admit that the eighth finding
of the special verdict raises the question whether the jury
have not by this finding brought the case within that rule.
By this finding the jury say that "such injury" ought to have
been "foreseen" by a person of ordinary care and prudence.
If this finding means that the precise injury suffered by the
plaintiff ought to have been apprehended as certain to occur,
then it would seem that the danger was so great, imminent,
and obvious that no person of ordinary care would subject
himself to it for a moment, even under a promise of repair.
Is this the fair construction of the finding? We cannot think
so. The seventh and eighth questions were evidently framed
to cover the question of proximate cause, but the eighth ques-
tion was inaccurately framed for this purpose. It is not nec-
essary, in order to constitute proximate cause, that the precise
injury should have been foreseen or apprehended as certain
to occur. It is sufficient if an ordinarily careful and pru-
dent person ought, under the circumstances, to have foreseen
than *an injury might probably* result from the negligent act.
*Meyer v. Milwaukee E. R. & L. Co.* 116 Wis. 336, 93 N. W.

6. Trial courts should carefully note the true rule as laid down in the case cited and the cases therein referred to. But the question as to the reasonable construction of the eighth question and answer remains. While it is inaccurately and unfortunately worded, we do not think it could have been reasonably understood by the jury as inquiring whether this particular injury should have been foreseen as certain to occur. If such was their understanding, an affirmative answer would be well-nigh, if not quite, absurd under the circumstances shown. It is difficult, if not impossible, to see how any person could foresee, in the sense of know, that this precise injury would occur. We think that under the circumstances the words "such injury" must necessarily have been construed as meaning "such an injury" or an injury of like nature, and the word "foreseen" as meaning apprehended or considered probable, a sense in which it is frequently used. With this construction, the question and answer become entirely reasonable and consistent with the evidence and with the balance of the verdict.

Nor can we assent to the contention that as matter of law the words testified to did not constitute a promise to repair. The plaintiff testified that upon his application to the foreman for repairs upon the machine the foreman said: "You go on with your work. I will fix your machine as soon as I get time." The appellant places considerable reliance upon *Wilson v. W. & St. P. R. Co.* 37 Minn. 326, 33 N. W. 908, and *Hayball v. D., G. H. & M. R. Co.* 114 Mich. 135, 72 N. W. 145, and *Standard Oil Co. v. Helmick,* 148 Ind. 457, 460, 47 N. E. 14. Examination of these cases, however, shows that they are not parallel to this case. In the *Wilson Case* a railroad yardmaster applied to a section foreman, who had no authority to make repairs without orders from his superior, to block a certain frog in the yard, and the foreman, after replying that he had no orders, said that, if he got time, he would fix it "some Saturday in the afternoon." In the

*Hayball Case* the plaintiff, who operated a machine for plan-
ing metals, applied to the foreman of the shop to repair the
machine, and the foreman said "he was doing one thing after
another as fast as he could, and he would get to it after a
while. . . . He was doing one machine as quick as he could,
and he was fixing one machine after the other as fast as he
could get to it." In the last case relied on the promise was to
repair a defective machine in a factory as soon as the order
then being filled was turned out. The court said that, for
aught that appeared, it may have required thirty days or six
months to run out that order, and hence the promise could
not be relied upon. It is evident in all of these cases that the
promise was simply a promise to make repairs at some in-
definite time, which might be weeks or months in the future.
The promise here was to repair as soon as he got time, and
we think that it might fairly be considered as a promise to
repair within a reasonable time.

Again, it is urged that the plaintiff continued to use the
machine an unreasonable time in reliance upon the promise.
The promise was made on Saturday forenoon and the injury
occurred on the following Monday morning. The question as
to how long the plaintiff might work in reliance on the prom-
ise without assumption of the risk is ordinarily one for the
jury under all the circumstances. It is true that the time
may be so long in a given case that a court would be obliged
to say that the plaintiff was not justified in continuing the
work, but we cannot say so here. The case is quite similar in
its facts to the case of *Curran v. A. H. Stange Co.* 98 Wis.
598, 74 N. W. 377, where a similar contention was overruled.

In the examination of a juryman upon the *voir dire* he was
asked by plaintiff's counsel whether he had any relations with
any of the officers of the Travelers Insurance Company, and
upon objection to the question plaintiff's counsel stated that
he understood that the insurance company named had indem-
nified the defendant against loss and was conducting the de-

fense, and that he desired to call the defendant to prove that fact. The court thereupon sustained the objection and directed the jury not to consider any statement which had been made in reference to the matter. Under the ruling in *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049, it is manifest that no error was committed.

One of the grounds urged in the court below in support of the motion for a new trial was that the damages were excessive. The ruling of the court on the motion is assigned as error in the brief, but no argument was made upon the question either in the brief or at the bar, hence we do not feel called upon to consider it. We find no other assignments of error which demand attention.

*By the Court.*—Judgment affirmed.