RUCK, by guardian *ad litem*, Respondent, vs. MILWAUKEE BREWERY COMPANY, Appellant.

*January 11—January 30, 1912.*

*Master and servant: Latent danger: Failure to warn: Evidence: Weight and sufficiency: Questions for jury: Special verdict: Form: Instructions to jury: Trial: Prejudicial proceedings: Excessive damages: Loss of eye.*

1. The weight of evidence and the effect of alleged contradictions and impeachments are matters peculiarly within the province of the jury and not questions of law for the court.

2. The defendant cannot complain of the refusal of the trial court to submit questions proposed for special verdict in so far as such refusal constitutes, in effect, a ruling that the evidence upon such questions is insufficient to sustain any claim of the plaintiff.

3. Rejection of questions proposed for special verdict is not error where the matters embraced therein are fully covered by the questions which are submitted.

4. In determining whether or not sentences and parts of sentences excepted to in the charge to the jury were incorrect or misleading, they must be considered and interpreted in connection with the other parts of the charge and the questions in the special verdict to which they were directed.

5. Recalling the jury immediately after they had retired, and stating that upon request of plaintiff's counsel the court would instruct them as to the burden of proof, was not in this case a proceeding prejudicial to defendant, although the court had refused, in the presence of the jury, to instruct as requested by defendant's counsel upon the burden of proof.

6. Refusal to give a requested instruction is not error where the material parts thereof are included in the instructions given, which fully cover the questions submitted to the jury.

7. An award of $7,000 for injuries to a boy under seventeen years of age, resulting in the loss of one eye, impairment of the sight of the other, and disfigurement by reason of inability to wear an artificial eye, is *held* not so excessive as to warrant interference by this court. MARSHALL and VINJE, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

The plaintiff, sixteen years and nearly five months of age, on July 3, 1907, while employed in the bottling department of the brewery of the defendant, received an injury by being struck in the eye by a piece of glass from an exploding bottle. The injury resulted in the loss of the eye. A statement of the findings of the jury upon this trial, in addition to the statement of facts contained in the report of the case on a former appeal (144 Wis. 404, 129 N. W. 414), is all that is necessary to fully present the facts of the case.

The jury found that the plaintiff was directed by the foreman to assist in "piling out" bottles of beer from the steam tank to the trays in which they were carried to the labeling machine; that there was a latent danger that the bottles, after being taken from the steam tanks and set upon the trays, would explode, while they were standing still, without the application of any external force to the bottles; that the defendant had knowledge prior to the time of injury of the latent danger; that the defendant negligently failed to warn the plaintiff

of the latent danger, and that such negligence was the proximate cause of the injury; that the plaintiff did not in the exercise of ordinary care know of the danger; that the explosion which caused the injury was not produced by the bottles being struck together by reason of the manner in which the plaintiff performed his work; that the defendant was not guilty of negligence in furnishing the plaintiff with a tray constructed as was the one used by him; and that no failure on the part of the plaintiff to exercise ordinary care contributed in any degree to produce his injury. The jury also agreed upon $7,000 as the sum which would reasonably compensate the plaintiff for his injuries. This is an appeal from the judgment on the verdict.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. L. Gold.*

The following opinion was filed January 30, 1912:

SIEBECKER, J. The former decision in this case on appeal to this court declared the rules applicable to the facts at issue between the parties and must control in the determination of the questions presented.

The verdict is assailed upon the ground that the evidence does not sustain the findings of the jury. In substance, we find the state of the evidence not unlike that on the former appeal, wherein it was held that it presented a jury question. 144 Wis. 404, 129 N. W. 414. The contention is however made that the evidence of plaintiff and of the witnesses who testified on the subject of the alleged danger from the explosions of bottles after being placed on the tray at rest and protected from external force, and on the subject of defendant's want of care as to knowing of such danger and warning employees thereof, differs from the facts on the former trial in

that it is so unreasonable, contradictory, and unreliable that it furnishes no basis for any inferences to be drawn by the jury.   The argument is made that the contradictions in this evidence are so manifold and the other forms of its impeachment are so destructive of its probative force that the former holding of its sufficiency cannot control.   This position is not tenable.   The weight of the evidence adduced and the effect of the alleged contradictions and impeachments are matters peculiarly within the province and functions of a jury, and their duties in this regard cannot be assumed as questions of law by the court.

It is urged that the court erred in rejecting twenty-one of the twenty-three questions submitted by the defendant as part of the special verdict.   The special verdict submitted by the court is correct.   It embraces the questions of the ultimate issuable facts presented by the pleadings and the evidence, and the findings in response thereto by the jury establish a complete cause of action and good ground for a judgment determining the rights of the parties as litigated upon the trial.

It is however claimed that the defendant was prejudiced by the rejection of these questions because they pertain to issues of fact raised by the pleadings and concerning which evidence had been adduced.   In so far as these proposed questions cover inquiries that are not part of the issues embraced in the verdict actually rendered it cannot be prejudicial, because in effect the court's rejection thereof constitutes a ruling that the evidence material thereto was insufficient to sustain any claim of the plaintiff and hence is a ruling in appellant's favor.   Do any of the rejected questions form part of the issues embraced in the verdict rendered which are not properly included and passed upon by the verdict of the jury?   From a study and examination of the requested questions we find that the only special issue of fact calling for submission in connection with the ultimate issues embraced in the verdict

was an inquiry as to whether or not the explosion and consequent injury to the plaintiff was caused by the bottles being struck together through the plaintiff's manner of performing his work, and this the court submitted by question 8 of the verdict. We find no error in the rejection of the questions proposed.

Exceptions are taken to certain sentences and portions of sentences of the instructions to the jury. We have examined them and find they were correct and that they contained nothing misleading when interpreted in connection with the other parts of the charge and the questions in the verdict to which they were directed.

Immediately after the jury retired, the court recalled them to the court room at the request of the plaintiff's counsel and stated that upon the request of plaintiff's counsel he would instruct them as to the burden of proof in the case, and proceeded to do so. It is urged that this was a prejudicial proceeding. The statement by the court that he recalled the jury at the request of plaintiff's counsel, after having refused in their presence to instruct as requested by defendant's counsel, cannot be said to have operated prejudicially upon the jury under the circumstances. Recalling the jury was a plain duty of the court, and we discover nothing improper in the court's manner of performing it.

Nor do we discover anything prejudicially erroneous in the court's charge defining negligence, or in the statements of the claims of the respective parties under the evidence. The instructions given fully cover the questions in the verdict, were correct, and contained the material and essential parts of the rejected requests to instruct.

A number of detailed exceptions to rulings on evidence are urged upon us as erroneous, because several witnesses were permitted to testify on redirect examination on the matter in their examinations on the former trial, and because the court improperly permitted cross-examination of the defendant's

witnesses on matters not touched upon in their direct exami-
nation. The points referred to in these examinations were
relevant and material to the questions litigated, and the evi-
dence adduced was competent. We find nothing to show that
the court unduly extended the scope of the inquiries or the
privilege of cross-examination to such an extent as to elicit.
facts not covered in direct examination.

The award of damages is assailed as excessive. It appears
that plaintiff's eye had to be removed. The plaintiff testifies.
that he suffered considerable pain from the treatment and
operation, that he is unable to wear an artificial eye, that
the afflicted side of his face is somewhat diminished in size
and exhibits the disfigurement resulting from the vacant eye
socket, that he has pains in this region of his face, and that
the sight of the other eye is not as good as before the injury.
The fact that plaintiff is young in years makes the injury and
damage greater than if it had occurred to him in a later period
of his life. True, as appellant claims, this court limited the
recovery in *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777,
for the loss of an eye to $6,000; yet it cannot be held that.
such a sum is to be regarded as the maximum amount for in-
juries of this nature. In the very nature of things the
amount which will compensate a person for an injury which
must attend him through life cannot be measured by strict
and definite rules and must be left largely to the sound judg-
ment of a jury, and the trial judge. Another case illustrative
of this subject is the case of *Coolidge v. Hallauer,* 126 Wis.
244, 105 N. W. 568, wherein the jury awarded $7,000 to an.
operator of a button machine, twenty-eight years of age, as
compensation for the loss of an eye. Though exception had
been taken to the amount as excessive, it was not urged that.
it was excessive upon appeal to this court, and we must con-
clude that the parties did not regard this amount as excessive
for such an injury. The trial court in this case approved the
award of the jury as reasonable and just. We do not con-

sider that this court should, as matter of law, hold the amount awarded to be unreasonable and excessive.

*By the Court.*—Judgment affirmed.

The following opinion was filed March 4, 1912:

MARSHALL, J. (*dissenting*).   Duty, it seems, calls me to dissent as to the damages.   I would not do so on any unsubstantial ground or where, to my view, the matter was doubtful.   With due respect, I trust, for the opinions of others, here the error seems clear; the approved recovery to violate precedent, violate the logic of legal damages in such cases, violate legislative policy in general, and be detrimental to public welfare.

My judgment is not better than that of any of my brethren, but no judge can be truly loyal to duty without standing by firm convictions created by careful reflection and consideration.

In view of my oft expressed opinion respecting the ethical right of every employee to just compensation for inadvertent bodily injuries received in the course of his employment, regardless of the source of fault, it cannot be thought I am not keenly sensible to human suffering in such cases.   But one must hold to legal, just, practicable standards as he understands the matter.

I repeat what I have urged before,—personal injury losses in service, necessarily, must enter into the cost of production to be paid, ultimately, by the consumer, according to an economic law as certain in its operation as any in nature,— there is no escape from it.   Invisible and unappreciable as it is,—as much so as the forces which control the planets, the ultimate point of rest of all such losses is the body of the products entering into consumption.   Humanity as well as conservation of human resources and welfare, require this great truth to be appreciated, as I have taken the liberty, sev-

eral times, of suggesting. *Monaghan v. Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066; *Houg v. Girard L. Co.* 144 Wis. 337, 352, 129 N. W. 633; *Knudsen v. La Crosse S. Co.* 145 Wis. 394, 130 N. W. 519.

However, the idea of compensation, whether vitalized by common-law rule or written law or left to rest in mere ethical standards, springs from one's sense of justice under all the circumstances, keeping in mind that full compensation is impossible, the attempt to effect it destructive, and that those who furnish opportunity for employment as well as the employed are to be considered in dealing with the matters which are the inevitable incidents of industry, the common misfortune and common burden.

True logic in the field under discussion is stated in *Guinard v. Knapp, Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, and often approved here:

"Although the defendant may have committed a fault, it is not, for that reason, an outlaw nor beyond the care of the law. Society may still receive valuable service from it, and so is interested to preserve it against spoliation, by applying to plaintiff's recovery a proper limit of compensation. It could not advance the interests of society to impoverish and bankrupt the unfortunate defendant. . . . Absolute indemnity is impossible. . . . The most [the law] aims to do . . . is to give some just compensation for the damages suffered."

To go further in an effort to repair a personal injury loss than as above indicated, would establish a new rule, productive of waste, which legislatures all over the land have been striving to prevent. Exorbitant recoveries encourage litigation, demoralize the profession, discourage industry, prejudice general welfare, and bring down criticism upon the courts as inefficient to maintain a practicable standard of justice. Just compensation to the injured is a legitimate part of created things; any excess with its large public and private incidental expense, constitutes waste, abnormally increasing the price of consumable things, decreasing indus-

trial activity and opportunity for labor, bearing down wages
and up the cost of worth-while existence. From any view-
point, courts should co-operate with the lawmaking power
to make recoveries certain and economical, where there is a
right to recover, but always within reasonable limits.

The foregoing prefatory remarks seem proper as a basis
for what I may say as to the particular recovery. To appre-
ciate my view of the case, it must be surveyed as I read the
record.

The boy was sixteen years old. He had substantially en-
tered into his real place in the social state. He was twenty
at the time of the trial. He was rather dull, without educa-
tion or capacity for much development, and could not well
be thought to have had fair prospect of rising above the level
of common labor. He was in the hospital but a few days.
His case ran the usual course to a substantial recovery. His
general health and working capacity were not materially im-
paired. He yet, occasionally, senses some abnormal feeling,
akin to pain. He returned to work for appellant, as he said,
in about three weeks and continued some three years and till
after the first trial of this case. He worked elsewhere till
about the time of the last trial. He said he could not wear
a false eye because it hurt him; but there was no expert evi-
dence as to difficulty in that regard. It is to be presumed he
could, as every one in such circumstances has to, accustom
himself to use of a false eye, substantially restoring his for-
mer personal appearance. In short, the case is ordinary, so
far as the injury is concerned, and rather below it as to
pecuniary loss. If it so looked to my brethren I hardly
think the $7,000 judgment would have been approved.

What does the recovery mean under the circumstances?
The service activity of such a person is never regular.
There are interruptions by causes too numerous to mention,
reducing average working time for life, probably, to 250
days per year and average yearly wages to $350 or less. The

expectancy of life was forty-seven years. In the period of old age, working time, efficiency, and remuneration would be greatly reduced. Interest on $7,000 will afford more than the full wage value of his life and leave, considering his station, a large fortune. Looking at the matter in another aspect, the recovery is equivalent to a life annuity for the man of $25 per month. Does the law contemplate any such thing?

True, there may be large attorney's fees to be paid, but the law does not contemplate any enhancement of the recovery on that account. How much, as a fair measure of the loss, under the circumstances, regardless of litigation? That is the question. In contemplation of law, expenses, so far as the losing party should pay them for his adversary, are measured by the cost bill. An instruction to consider the additional cost to plaintiff in awarding damages, would be promptly condemned. So we deal with the $7,000 as given for loss, independently of the litigation.

Now are there precedents here for such a recovery as the one before us,—precedents for affording a person injured by loss of an eye without materially injuring health or working capacity, except for a brief period, the full value of his life in compensable labor feature?

The court refers to *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 707. It was this: A young, well educated, comely lady of experience in a profession which required good eyesight to enable one to serve well,—one able to earn more than a common laborer by far, and of good prospects, lost an eye. The case was extraordinary in many aspects. The injury practically destroyed the young woman's valuable life prospects. The jury awarded $12,000. The trial court approved it. This court thought it manifestly excessive. The judgment was reversed on several grounds, rendering an option to take a new judgment impracticable. The court suggested that no sum in excess of $6,000 could be sustained on the evidence.

Had the case been one for an optional judgment the amount would, doubtless, have been placed as low as $2,000 or $3,000. The court justified the decision by referring to the fact that, in general, recoveries in such cases had been for from $2,000 to $5,000. How can we say then that the court did not hold $6,000 to be the maximum for loss of an eye, even under very distressing circumstances, and that, in general, $5,000 to $2,000 is about right?

The court further refers to the recovery of $7,000 in *Coolidge v. Hallauer,* 126 Wis. 244, 105 N. W. 568. Plaintiff was a young mechanic. The circumstances showed loss much greater than here. Probably through oversight, the excessiveness was not referred to for reversal, counsel having overconfidence in other points. The subject was not passed upon at all. Whether the court would have cut down the amount under other circumstances we can only be of opinion. But it seems quite novel to refer to omission of counsel to bring such a matter to the attention of the court as a precedent to guide judicial footsteps in case of a contest.

*Wysocki v. Wisconsin Lakes I. & C. Co.* 121 Wis. 96, 98 N. W. 950, was not referred to. There plaintiff lost an eye, his face was badly disfigured, and skull fractured so that part of it, covering the brain, had to be removed. He was confined to his bed some three months and, after a painful partial recovery, he was left a wreck for life. A verdict of $8,000 was sustained. The case was highly extraordinary, the loss of the eye being the smallest part of it.

Now as to foreign precedents,—there are isolated cases of large recoveries, explainable, in general, by special circumstances. Here is about as fair and full a collection of them as can be made: A man, aged thirty-five, able to earn a large salary, lost an eye and had his working capacity reduced one-half, was awarded $5,000. *Johnson v. Mo. Pac. R. Co. 96* Mo. 340. A locomotive engineer from loss of an eye was unable to work for eight months, was put to considerable ex-

pense and disqualified from his occupation, recovered $3,000. *East St. Louis v. Dougherty,* 74 Ill. App. 490. A young man, aged twenty-two, who lost one eye with usual incidents, recovered $2,000. *Lemser v. St. Joseph F. Mfg. Co.* 70 Mo. App. 209. Loss of eyesight by boy of eighteen, in bed six weeks,—in opinion of physician would never be well, $3,000. *New Jersey R. & T. Co. v. West,* 32 N. J. Law, 91. A farmer lost an eye, suffered much pain, and his earning capacity was largely diminished, recovered $5,000. *Texas & P. R. Co. v. Bowlin* (Tex. Civ. App.) 32 S. W. 918. A recovery of $5,000 for such a loss was reduced to $2,000. *Benagam v. Plassan,* 15 La. Ann. 703. Man of twenty-three, for loss of both eyes, recovered $6,000. - *Bane v. Irwin,* 172 Mo. 306, 72 S. W. 522. A machinist, thirty-six years old, for like loss recovered $3,300. *Famous Mfg. Co. v. Harmon,* 28 Ind. App. 117, 62 N. E. 306. A boy of eight lost an eye,— recovery $2,500. *Van Camp H. & I. Co. v. O'Brien,* 28 Ind. App. 152, 62 N. E. 464. A blast furnace employee had both eyes seriously impaired,—equivalent to loss of one, his face was very seriously burned and hearing injured. He recovered $1,700. *Ill. S. Co. v. Sitar,* 98 Ill. App. 300, affirmed 199 Ill. 116, 64 N. E. 584. A man of fifty-one, earning a salary of $1,000 per year,—lost one eye, the other was seriously injured so as to render total blindness probable, recovered $12,000. *Cummings v. Nat. & P. W. Mills,* 24 R. I. 390, 53 Atl. 280. A young man of twenty-four lost one eye, his capacity for labor was considerably reduced. He obtained a verdict for $8,000. The amount was said to be excessive beyond anything that could be found, and reduction of $1,000 ordered. *De la Vergne R. M. Co. v. Stahl,* 24 Tex. Civ. App. 471, 60 S. W. 319. Railway mail clerk for loss of an eye recovered $2,500. *Cook v. Mo. Pac. R. Co.* 94 Mo. App. 417, 68 S. W. 230. A man was made blind by an explosion in a stone quarry and was otherwise greatly injured. He obtained a verdict for $9,000 after six trials,

which was said to be large but sustained under the circum-
stances. *Stearns v. Reidy,* 33 Ill. App. 246, 135 Ill. 119, 25
N. E. 762. A medical student had one eye destroyed, ren-
dering him unable to read with the other eye, destroying his
life prospects and causing him intense suffering, recovered
$7,500. *Louisville v. Keher,* 117 Ky. 841, 79 S. W. 270.
A young man entering upon a career as a mechanic for which
he had natural aptitude, lost one eye, causing probable dep-
rivation of life prospects in his chosen field, recovered
$5,000. The court, with some hesitation, refused to inter-
fere. *Cleveland, C., C. & St. L. R. Co. v. Tehan,* 26 Ohio
Cir. Ct. Rep. 457. A boy sixteen years old, very capable,
would have been of capacity to earn $100 per month by his
majority, lost sight of one eye. He suffered intensely for
months and continued to suffer down to the trial. He recov-
ered $5,000. *Georgia, F. & A. R. Co. v. Lasseter,* 122 Ga.
679, 51 S. E. 15.

With the foregoing recoveries in courts at home and
abroad, and the legislative policy in all civilized countries of
the world, all the states of our Union where compensation
acts have been adopted or proposed, the pending proposed bill
in Congress, the schedule of rates for pensions for such losses,
and established principles upon which compensation should
be based,—we have a demonstration, it seems, that $2,000 to
$3,000 for an ordinary case of loss of an eye is about fair.
Anything more should challenge close attention, and much
more be thought manifestly excessive.

I appreciate the length of this opinion, but think it is justi-
fied by the case and the purpose. There should be no thought
of punishment in the minds of jurors, permitted to be effi-
cient, as said by this court in *Potter v. C. & N. W. R. Co.*
22 Wis. 615. Evidence to the contrary should receive effi-
cient attention. The sole thought of jurors should be, in
case of liability, fair compensation for the loss suffered by
the mutual misfortune. The amount of recovery in such

Ruck v. Milwaukee Brewery Co. 148 Wis. 222.

cases is the dominant thing, yet often receives the least attention from defendant's counsel and the courts. That, as it seems, comes from habitually overlooking the Code giving judicial authority, where the old system did not, to guard defendants against spoliation by the sympathy or indignation of jurors overmastering their judgment, or by some other cause.

Is there not need for some halting in the field discussed? Is it not a discredit to our system, as vitalized by the administration of it, when such system is viewed as a science, that it permits a range of recoveries of $2,000 to $7,000 without any very great difference in situations? If so, where is the fault? Is it in the system or in its administration? Is there not room for beneficial change other than by written law? Could there be such a range as suggested without the difficulty being in failure to impress upon juries the true logic of recoverable loss, and giving too much heed to unbridled arbitrary awards under lingering influence of the perversion that the judiciary is practically helpless where the award is not characterized by passion or prejudice? I apprehend that if the trial court had given plaintiff the option to take half the amount of the jury award, or submit to a new trial, the ruling would have received approval here, and that such course would have been taken if the scope of judicial authority under the Code had been fully appreciated.

VINJE, J. I concur in the foregoing opinion by Mr. Justice MARSHALL.