STEFANOWSKI, by guardian *ad litem,* Appellant, vs. CHAIN BELT COMPANY, Respondent.

*October 9—November 7, 1906.*

*Master and servant: Negligence: Defective machinery: Injury to servant from use of his own device: Proximate cause.*

Defects in the drilling machinery with which plaintiff was reaming out holes in links for chain belts caused the links to become heated and made it necessary for him to adjust them with his fingers. He complained thereof, but was directed to go back to his work or quit. He accordingly returned to the work, but constructed a ·device of his own invention, consisting of a wire hook hung by a loop around two of his fingers, with which to pull the links from the machine. There was no likelihood or danger of his fingers being brought in contact with the drill if he operated it in any manner within the previous knowledge or experience of any person; but the wire hook attached to his fingers was caught and wound around the drill shaft and the

fingers were pulled off. *Held,* that the use of such device was the efficient cause of the injury; that such use was neither probable nor within reasonable anticipation; and hence that the defects in the machine were not proximately connected with the injury so as to·make them the legal cause thereof.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Plaintiff, when thirteen and one-half years of age, was employed in the factory of the defendant, which was engaged in making chain belts composed of U-shaped links joining the jaws of one to the base of another by a transverse bolt running through holes in the jaws of the one link and the straight base of the other. These links were about two inches long and two inches wide. They were roughly cast, with a transverse hole through each of the jaws and through the straight base, and plaintiff was set to work with a drill at reaming out these holes. The machine had a table on which the link was placed, and from above descended a vertical revolving shaft having at the lower end a sharpened drill, rapidly revolving, which penetrated these holes and smoothed them. Upon the table was a jig or bar of iron calculated to just fit within the jaws of the link and to hold it rigid so that the descending drill would exactly strike and penetrate the holes. The drill was caused to descend by pulling upon a lever with the left hand of the operator. The link was placed upon the jig with the right hand of the operator, who, under most circumstances, was also required to squirt, from an ordinary oil can, water upon the drill to keep it from heating. Plaintiff's testimony tends to show that the jig on the machine in question had become somewhat worn so that it did not hold the link in perfect position, but needed the aid of his hands; also that the water can worked badly so that the process of drilling made the link too hot to be comfortably touched with bare fingers; also it is claimed that the drill supplied him had been worn so short that it would not reach the hole in the lower

jaw of the link when in position, so that after drilling a hole in one jaw the link had to be withdrawn, turned over, and again pushed onto the jig in order to bore the hole in the other jaw.   Plaintiff's fingers became sore from repeated contact with the hot links.   He complained of the situation and of this trouble and asked to be put at other work, but was commanded to go back to this work or go home.   He accordingly returned to the work, and at noon constructed a device of his own invention, consisting of a small wire one end of which he bent at right angles to constitute a hook to insert in the hole through the base of the link to pull it away from the machine.   At the other end he bent the wire into a loop to fit round the two middle fingers so as to hang there during other operations with the right hand, thus avoiding delay of laying the hook down and picking it up each time.   This wire, as it was attached to the fingers, was necessarily brought into close proximity to the vertical revolving drill in each operation of turning over the link and reinserting it on the jig.   After about a half hour's use it caught thereon, and the wire was rapidly wound around the drill shaft, and plaintiff's two middle fingers pulled off.

After trial and overruling motions for nonsuit and for direction of a verdict in favor of the defendant, the jury found a special verdict to the effect that plaintiff was not sufficiently instructed of danger, and had not sufficient knowledge to comprehend the risk of the wire hook used by him, and was not guilty of any want of ordinary care; that the drill press was defective and defendant charged with knowledge thereof; and, in answer to the seventh question, that the insufficient condition of the drill press was the proximate cause of the plaintiff's injury.   Plaintiff's motion for judgment was denied, and defendant's motion to reverse the answer to the seventh question was granted, and judgment rendered in favor of the defendant, from which plaintiff appeals.

For the appellant there was a brief by *Loyal H. McCarthy*

and *Charles G. Woolcock,* attorneys, and *W. S. Frazier,* of counsel, and oral argument by *Mr. Woolcock.* To the point that the defective condition of the machine was the proximate cause of the injury, they cited *Coolidge v. Hallauer,* 126 Wis. 244; *Winchel v. Goodyear,* 126 Wis. 271, 276; *Darcey v. Farmers' L. Co.* 87 Wis. 245; *Shepherd v. Morton-Edgar L. Co.* 115 Wis. 522; *Yess v. Chicago B. Co.* 124 Wis. 406; *Cleveland R. M. Co. v. Corrigan* (Ohio) 3 L. R. A. 385, 390; *Siegel, Cooper & Co. v. Trcka,* 218 Ill. 559, 2 L. R. A. N. s. 647; *Block v. Milwaukee St. R. Co.* 89 Wis. 371.

For the respondent there was a brief by *Roemer & Aarons,* and oral argument by *J. H. Roemer.*

DODGE, J. The sole error assigned is that the court held, as matter of law, that the defective condition of the drill was not the proximate cause of plaintiff's injury, against which holding appellant's counsel presents a forcible and plausible argument. While every act or event without which some result would not have been reached is, in colloquial sense, a cause thereof, not every such act or event is the legal cause of the injurious result in the law of torts. That legal proximate cause which, when it involves negligence of another, results in his liability has been often defined and last carefully discussed in the two opinions in *Winchel v. Goodyear,* 126 Wis. 271, 105 N. W. 824. The proximate legal cause is that acting first and producing the injury, either immediately or by setting other events in motion, all constituting a natural and continuous chain of events, each having a close causal connection with its immediate predecessor, the final event in the chain immediately effecting the injury as a natural and probable result of the cause which first acted, under such circumstances that the person responsible for the first event should, as an ordinarily prudent and intelligent person, have reasonable ground to expect at the moment of his act or default that an injury to some person might probably result

therefrom. The act of one creating a peril may none the less be the legal cause of an injury to another because of interfening events which might or might not take place, provided such events are natural and probable, and provided the probability of injury might be reasonably anticipated. In both the *Winchel v. Goodyear* and *Yess v. Chicago B. Co.* (124 Wis. 406, 102 N. W. 932) cases the intervening event was a slipping of the person injured by reason of surrounding conditions, thus bringing himself within the peril which the defendant had created, and it was held that such events might, by a jury, be considered natural and probable under all the circumstances. A similar holding was made in *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271, where the intervening event was a fainting or falling of the injured person caused by fright at the sudden apparition of an unnotified and negligently rapid railroad train. In the last-cited case, at page 155 (103 N. W. 273), was adopted a carefully framed description of such an intervening event as will break the chain of legal proximity between an earlier negligent act and the injury:

"Whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action."

The question here presented is whether the use by plaintiff of the wire hook could, by any reasonable mind, be deemed such a natural and probable event so that a chain of legal causation between the defective condition of defendant's drill and the injury to plaintiff's fingers was unbroken. Of course we are not advanced much toward an answer to this inquiry by the obvious fact that, but for the use of such wire, the injury would not have happened. It is equally true that

but for the fainting or slipping in the cases just mentioned the injury would not have occurred; and yet it is doubtless essential to a holding that the use of the wire, instead of being one of a chain of natural and probable events, was in fact the legal cause of the injury, that we should discover that the injury would not have happened without it; therefore it is proper to mention that entirely obvious fact. Another fact which is of some cogency, though not in all cases conclusive, is that there was no close causal connection between the defective drill and the use of the wire invented by the plaintiff and used upon his own volition. But causation of every act, circumstance, or condition which participates in the chain of events leading to the injurious result need not be by the event or act which is held the proximate cause, for in both the *Yess* and *Winchel Cases* the slipping of the plaintiff was in no wise caused by the defect in the machine from which he suffered. Their efficacy was merely to bring about a condition subjecting plaintiff to the perils negligently created by the defendants in the respective cases, acting naturally and probably. It does, however, appear in the present case that in the operation of the drill in question there was no likelihood or danger of plaintiff's fingers being brought in contact therewith if he operated it in any manner within the knowledge or experience of any person; that the only way in which his fingers were in fact brought into that peril was by reason of the use of a device unique and unprecedented, and which cannot but be considered the result of very unusual ingenuity and invention by the plaintiff himself. So far as appears by the evidence, no one had ever thought of using a hook for pulling the links away from the machine; but that is not all of the peculiarity involved in plaintiff's device. A mere hook which was to be laid down pending the other operations with the right hand, and picked up again when used, would not have brought about the injury, but it would have been inconsistent with the rapidity with which the operations of the insertion,

turning, and removal of the links needed to be performed. To obviate this latter difficulty plaintiff's invention went to· the extent of devising a loop on one end to place over his fingers in such a·position that the hook end would be out of the way while he was manipulating the links with his fingers, and yet not involve the delay of laying it down and picking. it up again. But it was this very circumstance of the arrangement of the wire with this loop, so that in a certain position of his hand it was brought into close proximity to the vertical shaft of the drill, that enabled it to come in contact with that revolving ·shaft and thus tear away his fingers. Obviously here was such novelty of invention as would almost, if not quite, satisfy the most hypercritical patent examiner. Surely it cannot be that an event which never occurred before in. years of human experience, and which could not happen without what amounts to a spasm of inventive genius in an inexperienced boy, is either probable or within reasonable anticipation. The contrast presented by *Coolidge v. Hallauer,* 126· Wis. 244, 105 N. W. 568, is instructive. There, the intervening act or event which immediately rendered the defect in a lathe efficient to injure, was the application of a file by the· injured man, but that act was one known by the employer to· be customary and frequent with operatives, and the file had· been provided for that purpose. Further interestingly instructive cases have been gathered by respondent's counsel. *Nelson v. Narragansett E. L. Co.* 26 R. I. 258, 58 Atl. 802; *Stephenson v. Corder,* 71 Kan. 475, 80 Pac. 938; *Fishburn v. B. & N. W. R. Co.* 127 Iowa, 483, 103 N. W. 481; *Conley v. Am. Exp. Co.* 87 Me. 352, 32 Atl. 965; *Pryor v. L. & N.. R. Co.* 90 Ala. 32, 8 South. 55; *E. T., V. & G. R. Co. v. Reynolds,* 93 Ga. 570, 20 S. E. 70; *McFarlane v. Sullivan,.* 99 Wis. 361, 74 N. W. 559, 75 N. W. 71; *Holdridge v. Mendenhall,* 108 Wis. 1, 5, 83 N. W. 1109.

We conclude that the trial court correctly decided that the evidence conclusively established that the act of the plaintiff·

in using the wire device was the efficient cause of the injury, and that it was neither probable nor within reasonable antici- pation of an ordinarily prudent and intelligent person, and, as a result, that the defects in the drill were not proximately connected with the injury so as to make them the legal cause thereof.

*By the Court.*—Judgment affirmed.