## Anna Pagan, Executrix, Appellee, v. City of Highland, Appellant.

1. MASTER AND SERVANT—*duty of inspection.* Timbers, ropes, chains, etc., that are to be employed in lifting or sustaining great weight, should be subjected by the master to a strain of at least equal weight to that to be lifted or sustained where human life is exposed.

2. NOTICES—*"An Act concerning suits at law for personal injuries and against cities, villages and towns," construed.* If the "person injured" was instantly killed, the notice provided for by this act need not state any residence with respect to such person, and the statute does not require that the notice shall state the residence of "the person to whom such cause of action accrued."

3. EVIDENCE—*what testimony by expert incompetent.* It is not proper for a witness, though an expert, to pass his judgment upon an ultimate fact on which the jury must make a finding.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed February 11, 1910.

**Statement by the Court.** The city of Highland appeals from a judgment of the Circuit Court of Madison county for the sum of $2,500 recovered by Anna Pagan, executrix of the last will of Fred Pagan, Sr., deceased, in an action on the case for the death of her husband, alleged to have been caused by the negligence of the appellant. The deceased was, and had been, a resident of the city of Highland for many years; and had been employed many times by the city as a common laborer on its streets. On November 28, 1907, he was employed by the city and placed in charge of the city's foreman, Adolph Leutweiler, to assist in the work of raising a smoke stack at the city's electric light plant. He was killed the same day about 4:50 P. M., on account of a defective link breaking in a chain around the smoke stack with which it was being hoisted, allowing the smoke stack weighing about two and one-half tons to fall upon and crush him through the roof

of the electric light building on which the smoke stack was being erected. He left surviving him Anna Pagan, his widow, and one minor and several adult children. At the close of all the evidence the court denied appellant's motion to direct a verdict of not guilty.

The declaration charges that the city was possessed of and operating the light plant for lighting the streets of the city; that the deceased was then and there employed by appellant as a common laborer to assist the city in raising and placing for use as a part of said light plant the said smoke stack; and that the city was guilty of negligence in providing and using an old chain with which to hoist the smoke stack which chain had defective links that were old, cracked and broken; and that a chain of the character used was not a proper appliance to be used for raising a smoke stack. Only the general issue was pleaded by the defendant to the declaration.

It is insisted here by the appellant (1) that the trial court erred in denying appellant's peremptory instructions; (2) the court erred in rulings on the evidence; (3) the court erred in overruling appellant's motion for a new trial and in entering judgment.

J. P. STRUEBER and WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

C. H. BURTON, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

In discussing the grounds for the errors assigned appellant's counsel have presented them in their argument under five different heads which we will consider in the order argued.

First and Second. It is insisted that the appellant is not liable in this case because at the time the deceased was killed he was under the exclusive control of Leutweiler Bros. who were erecting the smoke stack as independent contractors; that no one had charge

over them or right to direct them in any way in the work and that they owned and furnished the defective appliance that was used in raising the smoke stack; and that the deceased was the servant of the contractors at the time he was killed and that he was not the servant of the appellant at all. We have examined carefully the evidence in this record bearing on these questions. The evidence tends very strongly to show that Adolph Leutweiler was hired as a boss to take charge of the work and erect the smoke stack as the servant of the defendant. It is certainly clearly proved that he had charge and control of the men while doing the work and selected the defective chain in question with which to do the work. He testifies himself as a witness for the defendant that he was employed as boss and that he did not employ the deceased or any of the men who worked at this job. It is also clearly established by the evidence that the appellant employed all the men including the deceased to do this work and paid his executrix for his services therein. The further particulars of Leutweiler's contract with the city does not appear, and considering the further fact that one of the city's officers was assisting in this work at the time the deceased was killed, we think the jury were warranted in finding against the defendant in these contentions.

Third. We agree with appellant's counsel that the charge in the third count of the declaration that a chain is not a proper kind of appliance to be used in hoisting this smoke stack is not proved. On the charges of negligence in the other counts the evidence in the record shows that the link of the chain that broke and let the stack fall on the deceased, had an old rusty crack or flaw that extended half or more through the iron in the link at the point where it is broken. The chain itself which is certified here as original evidence clearly shows that it was defective. It also appears from the defendant's evidence that whether or not a chain like this is reasonably safe for use in heavy

lifting as was required in this case, cannot be determined by a mere inspection with the eye; that whether or not there are dangerous flaws or other rotten or unsafe conditions in the links must be determined by some more reliable test than by merely looking them over with the eye as was done in this case; and that such defects can be readily ascertained by the lifting or pulling test. No such test was made by the defendant, but the chain was simply inspected by looking it over with the eye. We think the jury were warranted in finding that the defendant was negligent in using the defective chain in question, and that by the exercise of ordinary care it would have discovered the defects in the chain. "Whether or not the duty of a master with regard to proper inspection has been performed by application of any given test is to be determined by considering whether that test will give indications as to the actual condition of the instrumentality in question. In the application of this principle the courts have usually proceeded upon the theory that a merely visual or occular inspection of external conditions does not satisfy the full measure of a master's obligations, where the servant's safety depends upon the soundness of the material of which an instrumentality is composed, or upon the firmness with which the separate parts of an instrumentality are attached to each other." Timbers, ropes, chains, etc., that are to be employed in lifting or sustaining great weight, should be subjected by the master to a strain of at least an equal weight to that to be lifted or sustained where human life is exposed. LaBatt's Master and Servant, Vol. 1, 35 and notes; Armour v. Brazeau, 191 Ill. 125; Wrisley Co. v. Burke, 203 Ill. 257; Mo. Malleable I. Co. v. Dillon, 206 Ill. 152; Leonard v. Kinnare, 174 Ill. 537; Consolidated Coal Co. v. Haenni, 146 Ill. 625; The Ethelred, 96 Fed. Rep. 446; Flynn v. The U. B. Co., 42 Mo. App. 530.

Fourth. Section 2 chapter 70 Hurd's Revised Statutes, 1908, page 1186, provides, that "Any person who is about to bring any action or suit at law in any court

against any incorporated city, village or town for damages for personal injury, shall within six months from the date of injury—file in the office of the city attorney—a statement in writing, signed by such person,—giving the name of the person to whom such cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident,—and the name and address of the attending physicians, if any." Appellant's objection to the notice in this suit is that it fails to state the residence of the person injured and of the person to whom the cause of action accrued. On a careful examination of the above section it will be seen that it does not require that the notice state the residence of "the person to whom such cause of action accrued." The "person injured" in this case, within the meaning of this statute was Fred Pagan, Sr., who was dead at the time said notice was filed, and the notice informs the city that he was killed November 28, 1907, as it then well knew. No action at law ever accrued to the deceased because he was killed instantly. The evident meaning of the statute is that the notice shall state the residence of the "person injured" at the date of the notice. Fred Pagan, Sr., the "person injured" in this case has had no existence in law since this cause of action accrued. For that reason he has had no place of residence within the meaning of the law. There was no physician for the same reason, and the notice does not even mention this fact. It was useless, therefore, as the appellant well concluded, not to object to the notice because the name and address of the physician was not given. While the statute is mandatory as to giving the required notice, as said in Erford v. City of Peoria, 229 Ill. 546, still it is not to be understood as requiring things that are impossible, or as requiring more than is therein specified. As there was no "person injured" in existence at any time after the cause of action accrued within the meaning of the statute, there could be no residence of such a person, and his former residence was not required

to be stated, and therefore we think the notice not subject to the objections made.

Five. We have examined the questions and answers of the witness, Mike Desmond, and the rulings of the court thereon; and while some of these rulings of the court may not be strictly accurate, we are unable to see wherein the defendant was materially prejudiced thereby. These rulings, however, were generally right. Several of the questions were improper because the answers thereto would necessarily have invaded the province of the jury. It is not proper for a witness, though an expert, to pass his judgment upon any ultimate fact on which the jury must make a finding. On page 48 of the abstract this witness is asked to state what he would say with reference to this so-called old chain being such a chain as could be used with reasonable safety in hoisting the stack. Whether the chain was reasonably safe for this purpose is one of the ultimate facts on which the jury were required to make a finding. The question is properly framed in the next question asked by appellant's counsel and the court ruled that the witness could answer it and he did answer it. It was proper if appellant could do so to show that the defects in this chain were open and obvious for the purpose of charging the deceased with notice of the defects. But when some of these questions were overruled by the court appellant's counsel stated, "I offer to prove that from his examination of this link as a mechanic and from his experience as such, the link as it is now produced would give no evidence whatever of any weakness at the point where it broke, and that he would not hesitate to employ the link in the same manner it was employed by Leutweiler in lifting this stack." While this evidence would serve to acquit both the deceased and the defendant of notice of obvious defects discoverable by mere inspection by the eye, yet the further testimony of this witness that flaws, imperfect welds and burnt iron cannot generally be detected except by the pulling or lifting test, is one of the principal

grounds why we think the jury were warranted in the conclusion that a reasonable inspection required the defendant to make such test. There can be no sort of doubt that the chain was in fact defective and dangerous. The real question is, did the defendant use ordinary care and diligence to ascertain if it was defective.

The judgment of the lower court is affirmed.

*Affirmed.*