**EGLSAER v. SCANDRETT et al.**

No. 8747.

Circuit Court of Appeals, Seventh Circuit.

Oct. 25, 1945.

---

[2] Act of April 30, 1790, 1 Stat. 112, 117 Section 21.

[3] Act of March 2, 1831, 4 Stat. 487, 488, Section 2 and Act of June 10, 1872, 17 Stat. 378.

Raymond J. Moore, of Milwaukee, Wis., for appellant.

Rodger M. Trump, of Milwaukee, Wis. (A. N. Whitlock and M. L. Bluhm, both of Chicago, Ill., of counsel), for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a judgment for the defendant entered in an action brought pursuant to and under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the death of plaintiff's decedent, a railroad engineer, following injuries sustained while he was out on an engine for the purpose of repairing a defective automatic bell ringer. The jury's verdict was special. It found the automatic bell ringer on the engine was in a defective condition. It also found, in answer to another question, that the failure of the railroad to provide an automatic bell ringer in good condition was the proximate cause of the injuries to, and the death of, said engineer.

Briefly stated, the evidence disclosed that while the train stopped at Freeport, Illinois, in the course of its run from Kansas City to Milwaukee, Engineer Mackin decided to get out of his cab to fix the automatic bell ringer which had ceased to work automatically and which had to be operated manually. He told his fireman he was going to repair it. The fireman offered to do it. Mackin, however, went ahead, climbing out of the cab and onto the "cat walk," on the right side of the engine. The fireman continued stoking the engine for the few minutes the train was at rest. This caused the escape of steam to such an extent that the fireman could not see forward from his cab window. When the fireman received the signal from the brakeman to proceed, he called to Mackin, who did not answer. The fireman then got out of the cab to look for Mackin, and found him on the ground on the left side of the cab. He was unconscious. He spoke only these words, "Where am I, what happened?" He was taken to a Freeport Hospital and died three days later. His daughter, as administratrix, brought this action.

The special verdict contained six questions, four of which with answers are here set forth:[1]

"1. Did the defendants fail to provide a locomotive boiler or a stoker engine in proper condition and safe to operate in the service to which the same were put? Answer: No.

"2. If you answer Question 1 'yes' then answer this question. Was such failure on the part of the defendants a proximate cause of the injuries and death of Daniel R. Mackin? Answer: * * *

"3. Did the defendants fail to provide an automatic bell-ringer in proper condition and safe to operate in the service to which it was put? Answer: Yes.

"4. If you answer Question 3 'yes' then answer this question. Was such failure on the part of the defendants a proximate cause of the injuries and death of Daniel R. Mackin? Answer: Yes."

Upon the rendition of the verdict defendants moved to change the answer to

---

[1] The other two questions and answers relate to the amount of damages, not here material.

question 4 because unsupported by any evidence in the case. In other words, defendants contended that there was no evidence from which legitimate inference could arise tending to show the defective bell ringer was the proximate cause of decedent's injuries. Plaintiff, on the other hand, contends that there was evidence from which the jury could draw inferences which in turn supported the finding that the defective bell ringer was the proximate cause of decedent's fatal injuries.

The correctness of the court's action in changing the answer to the fourth question of the special verdict is the sole and determinative issue on this appeal.

In its opinion on the motion after verdict the court gave its reasons for its action.[2]

More specifically describing the situation which tends to connect Mackin's fall with the bell ringer, it may be said there was evidence which tended to show the engine was dirty, much coal dust lying around, etc. Considerable evidence was offered in respect to a loose rope lying along the hand rail brackets of the engine adjacent to the bell ringer. Appellant's contention is that this rope, a part of the automatic bell ringer equipment, was grasped by Mackin in place of the hand rail thereby plunging him to the ground. Evidence out of which theories were spun, tended to show (a) the morning was misty and (b) the cat walk was slippery; (c) the engine was dirty; (d) there was a possibility that Mackin may have climbed over the engine instead of walking around it; (e) also the developing steam interfered with decedent's vision. These theories were offered pro and con. An inspection of the engine after the accident failed to clarify matters except to reveal a sharp heel print twisted as though perhaps it were made at the time of the fall.

The loose rope concerning the existence and position of which there was little question had not recently become detached from the bell because the bell had been manually operated before the engine reached Freeport. The jury might well have found that the rope had been used on some previous bell repair job and left there. The jury could have found that such a rope had been attached to and usable with a bell ringer, and was a part of the bell ringer equipment.

The governing statute, 45 U.S.C.A., § 51, reads:

"Every * * * railroad * * * shall be liable in damages * * * for such injury or death resulting in whole *or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

The decisions construing this statute are legion. And decisions elucidating the principle of "proximate cause", or attempting to do so, are without bound. Even a cursory study of them would convince the student of the law of the truth of the statement of Roberts, in the text, "Federal Liabilities of Carriers", Sec. 869,

"No phase of negligence law offers greater resistance to logical treatment than the much discussed question of proximate cause * * *.

" * * * It is not strange that attempts to frame an accurate and comprehensive definition of the term 'proximate cause' have not been successful. It has been spoken of as an 'efficient' cause, as a cause 'without which the injury would not have occurred,' as a 'direct' or 'dominant' cause."

A study of the decisions and the language of appellate courts is convincing of the conclusion that in no branch of the law is there greater justification for saying "the law is not an exact science" than in

[2] "Admittedly on the morning of March 13, 1944, the automatic bell ringer was not operating properly. This would justify the jury's answer to Question 3. Likewise that Engineer Mackin crawled out upon the side of the engine with the purpose of attempting a repair or adjustment of the bell ringer was not disputed. But the defective bell ringer was merely the occasion for Mr. Mackin to climb out on the engine. No proof was offered and I am sure none could be that the bell ringer caused his fall. It was operated by air.

If it had been operated by electricity and he had received a shock which caused him to lose his balance and fall, the jury might have had some justification for affirmatively answering Question 4. However, no proof was introduced that Engineer Mackin ever touched any part of the bell ringer mechanism or that he fell while attempting its repair or adjustment. The burden of proof was on the plaintiff to establish an affirmative answer to Question 4. This the plaintiff has failed to do."

the field of proximate cause. Greater accuracy would at times exist if the subject were described as the *approximate* instead of the *proximate* cause.

In construing the above-quoted statute, Roberts says:

" * * * it seems clear, in the light of the provisions above abstracted, that the liability statute definitely recognizes the complex causal basis of most injuries, and, in effect, states that if, among the several factors which have combined to produce an injury within the purview of the statute, there shall be found *any negligent act or omission on the part of the carrier to which such injury was in part due, then liability for such injury shall fall upon the carrier.*"

"The statute does not attempt to legislate upon the purely logical problem of determining the cause or causes of injury, but directs its mandate towards the problem of fixing liability for the injury. Logic may conclude that the injury resulted from the negligence of the employer, the employee's own want of care, the default of a stranger to the employment, an act of God, or pure accident, or from a combination of any or all of these factors. But after logic has thus determined the causal basis of the injury, the statute steps in to say that if, among these causes, there is negligence on the part of the employer, as that term is understood in the act, liability of the employer shall follow, irrespective of the other factors causally related in whole or in part from negligence, even if the negligence of the injured employee or some other factor was logically nearer to, or more influential in producing that injury. In the words of Mr. Justice Holmes: 'We must look at the situation as a practical unit, rather than inquire into a purely logical priority.'"

There have recently been before the Supreme Court two cases in which the evidence of alleged negligence of a railroad was deemed by the Circuit Courts of Appeals to have been insufficient to warrant a verdict for the plaintiff. In the one, Tiller v. Atlantic Coast Line, 323 U.S. 574, 65 S.Ct. 421, the Supreme Court, without extended discussion, held that the District Court properly submitted to the jury the issues of lack of light and lack of warning as possible proximate causes of the injury. In the other case, Tennant v. Peoria & Pekin R. Co., 321 U.S. 29, 64 S.Ct. 409, 412, 88 L.Ed. 520, a case which arose from

this court, the Supreme Court held the evidence sustained a jury's finding that failure to ring the bell before starting a locomotive was negligence on the part of the railroad and that such negligence was the proximate cause of the death.

In this last cited case we received this admonishing instruction:

"The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. * * *

"Upon an examination of the record we cannot say that the inference drawn by this jury that respondent's negligence caused the fatal accident is without support in the evidence. Thus to enter a judgment for respondent notwithstanding the verdict is to deprive petitioner of the right to a jury trial. No reason is apparent why we should abdicate our duty to protect and guard that right in this case."

The Court also said:

" * * * it was incumbent upon petitioner to prove that respondent was negligent and that such negligence was the proximate cause in whole or *in part* of the fatal accident. * * * Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' * * * If that requirement is met, as we believe it was in this case, the issues may properly be presented to the jury. No court is then justified in substituting its conclusions for those of the twelve jurors."

■ Perhaps the reconciliation of the earlier accepted, sometimes called the old-fashioned idea, of "proximate cause" as the direct or efficient cause of the accident (as would be the district court's illustration of a shock from a defective electric bell ringer causing injuries and death) in cases where this statute applies, and the conception of proximate cause which now obtains, is to be found in the enlarging phrase of the statute. It provides that if the railroad's negligence "*in part*" results in the injuries or death, liability arises. Under the old concept of proximate cause, that cause must have been direct, the complete, the responsible, the efficient cause of

566

the injury. Contributing and remotely related causes were not sufficient. Now, if the negligence of the railroad has "causal relation,"—if the injury or death resulted "*in part*" from defendants' negligence, there is liability.

The words "in part" have enlarged the field or scope of proximate causes—in these railroad injury cases. These words suggest that there may be a plurality of causes, each of which is sufficient to permit a jury to assess a liability. If a cause may create liability, even though it be but a partial cause, it would seem that such partial cause may be a producer of a later cause. For instance, the cause may be the first acting cause which sets in motion the second cause which was the immediate, the direct cause of the accident. Such a rule found some support in Wisconsin before the statute in question was passed. In Stefanowski v. Chain Belt Co., 129 Wis. 484, 109 N.W. 532, 533, 7 L.R.A.,N.S., 955, the court said:

" * * * The proximate legal cause is that acting first and producing the injury, either immediately or by setting other events in motion, all constituting a natural and continuous chain of events, each having a close causal connection with its immediate predecessor, the final event in the chain immediately effecting the injury as a natural and probable result of the cause which first acted, under such circumstances that the person responsible for the first event should, as an ordinarily prudent and intelligent person, have reasonable ground to expect at the moment of his act or default that an injury to some person might probably result therefrom. The act of one creating a peril may none the less be the legal cause of an injury to another because of intervening events which might or might not take place, provided such events are natural and probable, and provided the probability of injury might be reasonably anticipated. In both the Winchel v. Goodyear [126 Wis. 271, 105 N.W. 824], and Yess v. Chicago B. Co. (124 Wis. 406, 102 N.W. 932), cases the intervening event was a slipping of the person injured by reason of surrounding conditions, thus bringing himself within the peril which the defendant had created, and it was held that such events might, by a jury, be considered natural and probable under all the circumstances."

■■ Under the evidence in this case, there was a possibility (and the jury could have placed a much higher estimate than a possibility) that the deceased grabbed the unattached bell-ringer rope which was lying on the handrails, when reaching for the bell ringer, and, having no support therefrom, fell to the ground. Also, there was direct causal relation between the incurrence of injuries and the existence of the defective bell, although whether the defectiveness of the bell itself directly caused the death other than through the disconnected rope, we doubtless cannot say with greater certainty than a probability.

We cannot say, although the facts make us pause, that the jury's answer to question four allowed speculation to do duty for probative facts. We are somewhat influenced in reaching this conclusion by the holding in the Tennant case, supra, which the Supreme Court held was one properly submitted to a jury on the issue of proximate cause.

In reaching this conclusion the following facts are signal marks: Mackin fell; was injured; and from his injuries, died. He was on the ground beneath the bell ringer which he had gone out to repair. The bell ringer was defective, and defendants' negligence in respect thereto was clearly established. Plaintiff had the burden of showing the defective bell ringer was the proximate cause of decedent's injuries. Defendants' negligence need not be the sole cause. The loose rope was part of the bell ringer equipment. It should not have been lying where it was. In selecting one of the explanations of how the deceased fell, the jury was not speculating when it accepted the rope as the one most probable. In the light of the holding in the Tennant case, supra, we cannot agree with the District Court and say there was no evidence that Mackin's death did not result "*in part*" from the defective bell ringer.

The judgment is reversed and the cause remanded, with directions to enter judgment in conformity with the jury's verdict.