## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS, Appellant,

v.

## R. A. RICHARDSON, Appellee. No. 15191.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1955.

---

John A. Kerr, Cal Estill, Fort Worth, Tex., John W. Murphy, Tyler, Tex., Adair Dyer, Dallas, Tex., Stone, Agerton, Parker & Kerr, Fort Worth, Tex., for appellant.

Denning Schattman, Maurice M. Davis, Fort Worth, Tex., Davis, Schattman & Lewis, Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiff (appellee) brought this action under the Federal Safety Appliance Act[1] and the Federal Employers' Liability Act[2] seeking recovery for alleged injuries sustained while in the performance of his duties as a switchman for the appellant in its Texarkana yards on December 1, 1950. He alleged that while attempting to set a hand brake on a box car, the brake rod broke and he was thrown violently over the wheel and against the end of the car, causing injury particularly to his lower back.

. The evidence discloses that the car upon which the alleged accident occurred was equipped with an Ajax type brake which is arranged substantially as follows: On the back end at the top of the car there is a lever and a wheel. Attached to the wheel is a chain which extends downward approximately one-third the height of the car through a platform upon which the operator of the brake stands. Just beneath the platform the chain is connected to a vertical rod which extends to the bottom of the car. A series of chains and rods runs beneath the car toward the front or "a" end of the car to the brake shoes. The operator moves the lever to his left to "on" position and then turns the wheel to tighten all of the connections and force the brake shoes against the wheel.

At the time of the accident, plaintiff had been instructed by his foreman to set the brake on this car which was standing on one of the yard tracks. Plaintiff stated that he climbed to the platform and had turned the wheel to some extent when the brake rod suddenly broke, causing the wheel to spin loosely, and he was thrown over the wheel against the end of the car, thereby injuring his back. Plaintiff had been injured in another accident in August of 1947, but said this was to his side, and he had recovered within a few months with no subsequent ill effects.

The night foreman (mechanical department) testified he arrived at the car about fifteen minutes after the accident and inspected the rod; that it was freshly broken and otherwise described the condition of the brake mechanism; that the brake lever was in the "off" position, one of the chains beneath the car was "hanging down", and this indicated to him there had been no attempt to set the brake. He explained that before the brake could be applied it was necessary to move the lever to the "on" position, and, in his opinion, it would have been

---

1. 45 U.S.C.A. § 11.

2. 45 U.S.C.A. § 51 et seq.

impossible to break the rod by applying hand pressure to the wheel and that such breaks were usually caused by cutting off the air when the car stopped, thus causing the emergency mechanism to function with sufficient suddenness to snap the brake rod.

The yardmaster testified he had never known a rod to be broken by hand pressure on the wheel at the back of the car. On cross-examination he stated that the rod might break from such pressure if there were a defect in it but that it would have to be "practically rusted through down to a very small point."

There was considerable conflicting testimony as to the time when plaintiff first manifested and complained of a back ailment. The records of the railroad hospital were introduced, covering plaintiff's first injury in 1947 and all his subsequent visits thereto. These showed that he complained of a back ailment prior to the accident involved here. There was also the report of Dr. Oxford, an orthopedic surgeon, dated June 20, 1949, covering a visit to him by plaintiff, which the latter objected to as hearsay. Several fellow workmen also testified that plaintiff had complained about his back intermittently since his injury in 1947 and that they had noticed no apparent change in his condition or in the manner in which he did his work since the accident of 1950.

Plaintiff denied that he had complained with his back prior to the accident in December, 1950, and specifically denied that he had sought advice and treatment from Dr. Oxford for a back condition. Appellant offered Dr. Oxford as a witness for the stated purpose of impeaching plaintiff on this point. The doctor himself took the position that any remarks made to him by the plaintiff were privileged because of the physician-patient relationship, whereupon counsel for plaintiff objected to any testimony on the ground that it was privileged. There was general discussion of the alleged privilege by the Court and attorneys, and the Court sustained plaintiff's objection; however, he allowed counsel for appellant to take the testimony of Dr. Oxford outside the presence of the jury so that it might appear in the record.

There was a verdict and judgment for plaintiff in the sum of $7,000.00 from which defendant appeals. Appellant's alleged errors may be summarized as follows: (1) the Court's excluding the testimony of Dr. Oxford on a plea of professional privilege raised by the doctor himself; (2) charging that, as a matter of law, appellant had violated the Safety Appliance Act and the only question for the jury was whether plaintiff sustained any injuries and to what extent; (3) omitting the element of foreseeability in charging the jury as to the meaning of the term "proximate cause"; and (4) submitting to the jury alleged claims for future medical and hospital expenses when admittedly there was no evidence to support them.

On the first point, plaintiff concedes there was no physician-patient privilege. Consolidated Underwriters v. Foxworth, Tex.Civ.App., 196 S.W.2d 87; Bonewald v. State, 157 Tex.Cr.R. 521, 251 S.W.2d 255. See also 44 Tex.Jur. 1075. Even so, it is argued that the exclusion of Dr. Oxford's testimony was harmless since it would only have been cumulative of much other evidence contradicting plaintiff's statements about his back.

It is true that several fellow workmen testified plaintiff had complained of his back prior to his second alleged injury; however, as will be discussed in more detail later, plaintiff's credibility was most definitely an important factor in the case. He had emphatically stated that he had not complained to Dr. Oxford of trouble in his back, and no other person could contradict his statement. Actually, the testimony of the doctor which was taken out of the presence of the jury shows that it might well have been most damaging to plaintiff's case. Moreover, had the question of privilege not been erroneously injected into the case, the examination of the doctor no doubt would have been more complete. We think the error was clearly prejudicial. Pure Oil Pipe Line Co. v. Ross, 10 Cir., 51 F.2d 925.

■ The second alleged error arose when the trial judge gave the following instruction:

"The undisputed evidence shows and it is admitted by the defendant that one of the brake rods connected with the hand brake which plaintiff was setting did, in fact, break. This as a matter of law, constitutes a violation on the part of the defendant of the Federal Safety Appliance Act hereinafter more particularly mentioned and gives rise to a claim and cause of action on the part of plaintiff against the defendant railroad and leaves for your determination only the question of whether or not plaintiff sustained any injuries and whether or not any preexisting condition of his body was aggravated by such injuries and to what extent plaintiff has been momentarily [monetarily] damaged."

Appellant urges that the testimony of the mechanical foreman and of the yardmaster, describing the operation of the brake and its condition after the alleged accident, had raised 'a serious question of fact as to whether or not plaintiff had actually turned the brake wheel and also whether or not the rod had broken when plaintiff was operating the brake. It is argued that the quoted charge erroneously withheld this fact question from the jury. In response, appellee points out that it is not disputed the rod was broken and that he was therefore entitled to the instruction that as a matter of law there was a violation of the Safety Appliance Act. Further, he contends, the Court subsequently charged that the plaintiff must show his injury to have been "proximately caused by such inefficient hand brake while it was being used with due care and in the usual and customary manner."

There is no dispute as to the fact that the rod was broken, and to this extent, there is no doubt that the Safety Appliance Act was violated; however, there were no witnesses to the occurrence described by the plaintiff, and no one could actually contradict his account of the alleged accident. The testimony of the two railroad employees, who were in the nature of experts, certainly casts some doubt upon the credibility of plaintiff's account. From their experience, both testified they did not believe the rod could be broken as it was by manual pressure on the hand brake. Further, the night mechanical foreman described the position of the parts of the brake mechanism very shortly after the accident and concluded from this inspection that in his opinion the brake wheel had never been turned. If given sufficient weight by the jury, this testimony could have seriously contradicted plaintiff, and we think it raised a factual issue which should have been submitted to the jury. The Court went too far in the quoted charge when it limited the questions to be decided by the jury to whether or not plaintiff had been injured and to what extent. The subsequent instruction referred to by appellee was merely an explanation of what the judge took to be the duty of plaintiff in using the hand brake. It assumed that plaintiff used the brake and that the rod broke during such use; and these are the precise questions which we think should have been presented to the jury.

■ In his charge the trial judge gave the following definition of the term "proximate cause":

"* * * causal connection or relation between an act and an event produced or set in motion by such act, and without which the event would not have occurred. There may be more than one proximate cause of an event and the proximate cause need not be the direct and the only cause, but if one cause sets in motion another cause which produces an event, and without which the event would not have occurred, then such first cause setting in motion the other cause or causes which produced the event, may be a proximate cause."

Appellant had submitted a requested charge which read, in pertinent part, as follows:

> "An act or omission becomes the proximate cause of any injury whenever such injury is the natural and proximate consequence of the act or omission in question, and one that *ought to have been reasonably foreseen by a person of ordinary care and prudence in the light of the attending circumstances.*" (Emphasis supplied.)

This requested charge was refused. Appellant's counsel objected to the charge as given by the Court on the ground that the element of foreseeability was omitted, and the Court's refusal to include that element in his charge forms the basis of the third error urged here.

Appellee argues that when there is a violation of the Safety Appliance Act the question of negligence on the part of the railroad is removed; that since foreseeability is an element in the determination of negligence rather than causation, it had no place in the charge in this case. In support of his contention, appellee cites Tennant v. Peoria, Pekin Union Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Chicago, M., St. P. & Pac. R. Co. v. Goldhammer, 8 Cir., 79 F.2d 272, and Eglsaer v. Scandrett, 7 Cir., 151 F.2d 562.

■ It would seem a complete answer to appellant's contention that there was an admitted violation of the Safety Appliance Act. There does not appear to be any reason for lengthy discussion of this principle. Once the jury found there was a violation of the Safety Appliance Act, the only question remaining was whether it was a proximate cause of the injuries. In other words the law conclusively presumes that the railroad company knew of the defect and it could not contend that the same was not foreseeable. While it is true this Court said in Reynolds v. Atlantic Coast Line R. Co., 196 F.2d 643, that the consequence of a situation bringing about the accident must have been reasonably foreseeable, that case was not one involving the violation of the Safety Appliance law.

■ The judge gave two charges to the jury, in the first of which he indicated that if the jury found from the evidence plaintiff was entitled to damages, they were to take into consideration " * * * future medical and hospital expenses * * * ". Later he withdrew the complete charge and gave another to the jury in which, among other things, he told them: "In determining and fixing such future damages, if any, that is, future diminished capacity to work and earn money, future physical and mental pain and suffering, and *future medical and hospital bills,* if any, I charge you that you will award only the present cash value of such future damages * * *." (Emphasis supplied.) Appellant objected to this portion of the charge on the ground that there was no evidence to sustain any verdict for future medical and hospital bills. In this connection counsel for plaintiff made the following statement: "If Your Honor please, I don't exactly have an objection, I do think that Your Honor inadvertently left something in the charge on damages that should not have been in there, that is future medical bills, or future hospital bills, one or the other. *We don't have any evidence to support a charge on that,* and I do think that should be withdrawn from the jury, any consideration of future doctor bills." (Emphasis supplied.) The judge's response was: "I think I will let the jury have it. I am following the pleading perhaps more than the evidence in the matter."

It seems clear that, under the circumstances of this case, the lower court should have omitted or withdrawn any submission of future hospital and medical bills as a basis of recovery. However, inasmuch as the case must go back because of the errors already discussed, we are sure the charge with respect to these items will not be repeated.

The verdict and judgment are set aside and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.