Mary Wawryszyn, Administrator of Estate of Bohdan
Wawryszyn, Deceased, Appellee, v. Illinois Central
Railroad Company, Appellant.

Gen. No. 46,663.

First District, Second Division.
May 29, 1956.
Rehearing denied June 19, 1956.
Released for publication June 19, 1956.

395

Herbert J. Deany, William J. O'Brien, Jr., Robert S. Kirby, and Charles I. Hopkins, Jr., all of Chicago, for appellant; Joseph H. Wright, of Chicago, of counsel.

James A. Dooley, of Chicago, for appellee.

JUDGE ROBSON delivered the opinion of the court.

This appeal involves a death action brought under the Federal Employers' Liability Act (45 U. S. C. A. secs. 51–59) by the plaintiff, widow and administrator of the estate of Bohdan Wawryszyn, deceased, against his employer, the defendant, Illinois Central Railroad Company. A jury trial resulted in a verdict of $90,000 for the plaintiff. The trial court overruled defendant's motions for judgment notwithstanding the verdict and for a new trial and entered judgment on the verdict. Defendant appeals.

Defendant's principal contentions are that the trial court erred because (1) there was not sufficient evidence of negligence to sustain the verdict; (2) even if defendant was negligent, such was not the proximate cause of decedent's injury; (3) certain testimony of plaintiff's witness Bianchi was improper and prejudicial to defendant, and (4) improper and prejudicial actuarial testimony was admitted into evidence.

A review of the evidence in the light most favorable to the plaintiff reveals that decedent was a member of a freight handling crew in the employ of the defendant railroad company. Their job was to unload freight from dollies into boxcars. On November 6, 1951, checkers Phillips and Threat unloaded a crated diesel motor, weighing between 3,300 and 3,400 pounds, from a truck on the loading platform onto a four-wheel dolly. The four-wheel dolly was six feet long, three feet wide, and thirteen inches to the top of the bed. It had four swivel wheels. The dolly was new and in good condition. These men testified that they had instructions to place heavy freight on a piano dolly, which was about six inches closer to the ground than the four-wheel dolly, and had six nonswivel wheels. The defendant had only four piano dollies, and the men were unable to locate one not in use. They in-

397

formed the foreman, Streb, of this fact, and Streb then helped them put the crate on the four-wheel dolly.

Plaintiff's witness Bianchi, an assistant foreman for defendant at the time of the accident, testified that a four-wheel dolly is easier to tip over than a piano dolly; that the four-wheel dolly was made for merchandise under 100 pounds, such as cartons; that the four-wheel dolly was not the customary one for hauling the type of load here involved; that there were instructions by the foreman to place heavy loads on piano dollies. He testified, over objection, that it was not good practice to place so heavy a load on a four-wheel dolly, and that other railroads employed other methods which were safer.

There was testimony that the nearer the dolly is to the ground the less the possibility of any cargo falling off when being unloaded, and that the piano dolly is nearer the ground than the four-wheel dolly. On cross-examination one of defendant's witnesses admitted that it was more difficult to unload a heavy load from a dolly with swivel wheels than one with fixed wheels.

It was the job of decedent's crew to unload this crate from the dolly in the boxcar. The dolly was brought into the boxcar and pushed to its west end. A boxcar is about nine feet wide. Two of the crew members, Zick and Washington, jacked up the east end of the crate and placed a roller underneath it. It was raised approximately six to eight inches. The men then attempted to push the crate off of the dolly. The west end of the dolly tipped down and touched the floor with the diesel crate on top of it. It was in a position wherein the dolly and motor were resting on the west end and the east end of the dolly was lifted. They were unable to pull the dolly out from under the crate. Decedent was standing in the center of the south side of the load. Zick went to get a tractor to

pull out the dolly. Suddenly the cargo fell to the south side pinning the decedent, and crushing the lower part of his body. He subsequently died from these injuries. After the accident it was observed that the cargo was top heavy. One of the crew members testified that just before the crate fell he stated out loud: "I don't like it. It looks dangerous," and that decedent failed to move to a position of safety.

██ It is first argued that defendant's motion for a directed verdict and judgment notwithstanding the verdict should have been allowed. Recent decisions of the federal courts and our own state courts have held that unless there is a total failure or lack of evidence tending to prove negligence in an F. E. L. A. action, a verdict should not be directed. Wilkerson v. McCarthy, 336 U. S. 53; Louisville & N. R. Co. v. Botts, 173 F.2d 164; Bonnier v. Chicago, B. & Q. R. Co., 2 Ill.2d 606; Glime v. New York Cent. R. Co., 5 Ill.App.2d 509. Plaintiff's complaint contained various allegations of negligence. Among these was the charge that defendant employed improper equipment for doing the particular work involved, and that it undertook to accomplish the work in an unsafe method. Does the record totally lack any evidence tending to support these charges?

██ The record indicates that defendant employed two types of dollies for loading and unloading cargos into boxcars; that the piano dolly was used for heavy cargos, and the four-wheel dolly for light cargos; that the employees had instructions to use the piano dolly for heavy cargos; that the piano dolly, because of its nonswivel wheels, is easier to unload than a four-wheel dolly; that the piano dolly, because of its low axel and strong balance, is not likely to tip when heavy cargos are placed on either end; that the accident in question occurred after the four-wheel dolly had tipped to the floor, putting the heavy cargo in a pre-

carious position. When we consider this evidence in the light of the recent cases referred to, we are impelled to hold that the question of defendant's negligence was properly one for the jury.

Defendant further contends that judgment should have been entered in its favor because its negligence, if any, was not the proximate cause of decedent's injury. Defendant's theory seems to be that the use of the four-wheel dolly merely created the condition under which the accident occurred, and that the proximate cause of injury was decedent's own failure to take a safe position after the dangerous condition came into being. In support of this position defendant cites Seith v. Commonwealth Elec. Co., 241 Ill. 252, 259, where the court said:

"To constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence. It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury, but when it occurs it must appear that it was a natural and probable consequence of his negligence."

We fail to understand how the foreseeability argument can be of any help to defendant. The fact that two different tyes of dollies were used for light and heavy cargos, in itself, indicates that defendant foresaw the inadvisability of using the four-wheel dolly for heavy cargos.

■■ The following language from Dowler v. New York, C. & St. L. R. Co., 5 Ill.2d 125, 132–3, is controlling on this point:

"Under the old concept of proximate cause, that cause must have been the sole, direct, and responsible cause of the injury. Contributing and related causes were

not sufficient. However, the newer view in both the Federal and State courts, in cases arising under the Federal Employers' Liability Act, is that if the negligence has causal relation, or if the injury or death resulted in part from the defendant's negligence, there is liability. 45 U. S. C. sec. 51, 45 U. S. C. A. sec. 51; Lillie v. Thompson, 332 U. S. 459, 92 L. ed. 73; Eglsaer v. Scandrett, 151 Fed.2d 562; Tatham v. Wabash Railroad Co., 412 Ill. 568; Stefanowski v. Chain Belt Co., 129 Wis. 484, 109 N. W. 532."

It cannot be questioned but that there was some causal relation between the tipping of the four-wheel dolly and the falling of the crate. Thus, if defendant was negligent in using the four-wheel dolly in this instance, such negligence had a causal relation to the injury. Whether or not decedent failed to exercise due care for his own safety is not material to the primary question of whether or not defendant is liable, because contributory negligence is no defense under the Federal Employers' Liability Act. Hall v. Chicago & N. W. Ry. Co., 5 Ill.2d 135.

■ Defendant's next contention is that the court erred in allowing plaintiff's witness Bianchi to testify, over objection, that certain other railroads used forklift trucks for handling heavy freight. This evidence was directed at the question of whether defendant was negligent in having the men unload the dolly in the freight car manually. Defendant argues that such evidence was irrelevant and immaterial to the issue of its negligence, and that it amounted to evidence of *safer methods* and thus was not proper evidence for the jury's consideration.

Defendant relies on Blue v. St. Clair Country Club, 4 Ill.App.2d 284, and Doucette v. Vincent, 194 F.2d 834, for the proposition that evidence of safer methods is not admissible on the question of negligence. The Blue case has since been reversed by the Illinois Su-

preme Court in 7 Ill.2d 359. In the Doucette case the court held that the trial court did not err in excluding evidence of safer methods, but went on to say that the admission of such evidence lies in the discretion of the trial court. It may be admitted "for whatever evidentiary value it may have to show that a defendant did not take the care required by law in using the device or appliance he did, when there were available to him better and safer devices or appliances." The very question here involved was recently passed upon in Margevich v. Chicago & N. W. Ry. Co., 1 Ill.App.2d 162. On p. 167 of that opinion the court said:

"The testimony of experts with respect to safer methods used on other railroads is an evidentiary basis upon which the jury can decide whether the equipment and method of the railroad were reasonably safe, or whether it should have used safer equipment and methods."

We conclude that defendant's contention on this issue is without merit.

Defendant next contends that the trial court erred in allowing plaintiff's witness Bianchi to give his opinion as to the propriety of the equipment used to do the work involved. Bianchi was employed by the Illinois Central for twenty-eight years before becoming a general foreman for the C. B. & Q. Railroad. During his last twelve years at the Illinois Central he was an assistant foreman. He testified that he was familiar with the loading and unloading practices of the Illinois Central at the time and place of the occurrence in question. On direct examination the witness was asked:

"Mr. Bianchi, will you tell us whether in your opinion, based upon your years of experience, it was good practice to load a motor such as you have described on this type of four wheeled truck as portrayed by Defendant's Exhibit 2?"

The witness answered, "No." Defendant's objection was overruled. Defendant argues that this question called for an opinion on an ultimate issue in the case and thus constituted an invasion of the province of the jury.

■ ■ We believe it can be said to be the law of this state that neither an expert nor a nonexpert witness may give his opinion on an ultimate issue in the case. Gillette v. City of Chicago, 396 Ill. 619; Hughes v. Wabash R. Co., 342 Ill. App. 159; Keefe v. Armour & Co., 258 Ill. 28; Cleveland, C., C. & St. L. Ry. Co. v. Curtis, 134 Ill. App. 565. The question of defendant's negligence was clearly an ultimate issue in this case. Plaintiff contends that the question and answer complained of did not constitute an opinion on the issue of defendant's negligence, but merely elicited the fact that this was not the customary way the work was done on well-operated railroads. This reasoning is fallacious because it is based upon the invalid assumption that that which is not customary practice cannot be good practice. Noncustomary practice and bad practice are not synonymous terms. In fact, noncustomary practice may, in many cases, be equal to if not better than customary practice.

Nowhere among the cases involving opinions on the ultimate issue of negligence is there a ruling on the language "good practice." An opinion that defendant's conduct was "negligent" is clearly inadmissible. Rogers, Bacon & Co. v. Hart, 106 Ill. App. 393. It is also clear that an opinion that a situation caused by or a method used by defendant was "unsafe" or "not reasonably safe" is error. Keefe v. Armour & Co., supra; Village of Fairbury v. Rogers, 98 Ill. 554; City of Chicago v. McGiven, 78 Ill. 347; Pagan v. City of Highland, 152 Ill. App. 607; McFarland v. George W. Jackson, Inc., 189 Ill. App. 453. The rule also has been held to apply to opinions that a situation caused by or a method used by defendant was "extra-hazardous" or

"dangerous." Kolb v. Sandwich Enterprise Co., 36 Ill. App. 419; Hughes v. Wabash R. Co., supra. However, the cases of Hoener v. Koch, 84 Ill. 408, Kellyville Coal Co. v. Strine, 217 Ill. 516, Lee v. Republic Iron & Steel Co., 241 Ill. 372, and Schultz v. Burnwell Coal Co., 180 Ill. App. 693, indicate that it is not error for a witness to testify that the defendant's conduct or method was "proper" or "improper." It has been suggested that the theory for nonapplication of the ultimate issue rule in the above line of cases is that "improper" does not necessarily mean "dangerous" or "unsafe." Page 55, King and Pillinger, Opinion Evidence in Illinois (1942). This line of cases was decided prior to 1914 and has not been cited for over forty years.

■ ■ The purpose of the ultimate issue rule is to preserve the independence of the jury. Its application should not be affected by technical, semantical distinctions. If the probabilities are that the jury will construe an expert's opinion that defendant's conduct or method was bad or improper to be the expert's opinion on the ultimate issue of negligence, then, according to the purpose of the rule, that opinion should not be allowed. We feel that Bianchi's opinion that defendant's practice was not good is, as far as the jury is concerned, an opinion on the ultimate issue of negligence.

The modern tendency clearly seems to be away from the ultimate issue rule. Recently some jurisdictions have discarded the rule in varying degrees. Hooper v. General Motors Corp., 260 P.2d 549 (Utah); Dowling v. Shattuck, 91 N. H. 234; Grismore v. Consolidated Products Co., 232 Iowa 328; Woyak v. Konieske, 237 Minn. 213, 54 N.W.2d 649; Schweiger v. Solbeck, 191 Ore. 454, 230 P.2d 195; New York Life Ins. Co. v. Wolf, 85 F.2d 162. We conclude, however, that the law of

Illinois, properly construed, requires a finding that the testimony here complained of was improper.

Although the question and answer were improper, and the objection should have been sustained, we are of the opinion that the error was not sufficiently harmful to require a reversal. Before and after the objectionable question was put to Bianchi, he stated fully the reasons why a four-wheel dolly should not be used for a heavy load. Other of plaintiff's witnesses testified to the same effect. This evidence was of a proper character and was sufficient to authorize a finding that defendant was negligent in using a four-wheel dolly for the type of load involved. The clear inference to be drawn from said testimony was that it was not good practice to use a four-wheel dolly for heavy cargos. The objectionable question and answer, while erroneous, were merely cumulative on that point, and not of sufficient importance to require a reversal. City of Springfield v. Coe, 166 Ill. 22; City of Joliet v. Johnson, 177 Ill. 178; City of Litchfield v. Anglim, 83 Ill. App. 55.

We now come to defendant's contention that the actuarial testimony on the damages issue was improper and prejudicial. Plaintiff's witness Reise, a qualified consulting actuary, testified that on the basis of figures read to the jury by plaintiff's counsel, the decedent's average monthly take-home pay was $320.93. This figure represented the gross monthly earnings less deductions for federal income tax, for railroad retirement, and hospital insurance. It did not take into consideration any allowance for decedent's own personal expenses.

Reise further testified that decedent's life expectancy at the time of death was 467 months or 453 months, according to two different recognized life tables. He then testified that the present value of monthly earn-

ings at $320.93, discounted at 2% for a period of 467 months is $104,404.25, and at 3% discount is $88,938.08; that the present value of monthly earnings at $320.93, discounted at 2% for a period of 453 months is $102,302.81, and at 3% discount is $87,492.87.

Later in his testimony Reise deducted $40 per month for decedent's personal expenses, leaving average monthly contributions at $280.93. He testified that the present value of this figure was $91,391.54 or, at the higher discount rate $77,853.04 on the basis of an expectancy of 467 months, and $89,552.02 or, at the higher discount rate, $76,587.95 on the basis of an expectancy of 453 months.

Defendant objected to the first group of computations on the ground that since the measure of damages in an F. E. L. A. death action is the pecuniary loss reasonably to be expected by the widow and children of the deceased, computations based on future lost earnings rather than contributions, have no bearing on the question of damages, and serve the sole purpose of prejudicing the jury by exposing it to large, irrelevant figures. This objection was overruled.

In disposing of this issue we must decide two questions. First, is testimony as to probable future lost earnings a relevant consideration in a case of this nature and, second, if not, was the testimony in this case so prejudicial as to constitute reversible error.

■■■ The measure of damages in an F. E. L. A. death action is the pecuniary loss to the widow and minor children of the decedent. Dow v. Carnegie-Illinois Steel Corp., 165 F.2d 777., The recovery is determined by and limited to the present cash value of the future benefits of which the beneficiaries are deprived. Kennedy v. Ross, 213 Ill. App. 446. It is true that in order to determine future lost pecuniary benefits, the average monthly or annual earnings of the decedent must be ascertained. We can see, however,

406

no relevancy in capitalizing the average earnings and reducing the resultant figure to present value. The only evidence of earnings that can be of any possible aid to the jury in determining future lost benefits is that of the average monthly or annual earnings.

Plaintiff relies on numerous cases for the proposition that "earning capacity" may be considered by the jury in measuring the damages. That, however, does not mean that future lost earnings are a proper consideration. A man's earning capacity is how much he earns or can earn per week, per month or annually, and not how much he would have earned the rest of his life, had he not met an untimely death.

In the recent case of Allendorf v. Elgin, J. & E. Ry. Co., 8 Ill.2d 164, the Illinois Supreme Court frowned upon the practice of allowing the actuary to make computations on the basis of figures appearing in evidence, and, on pages 177 and 178 suggests that the actuary employ "neutral figures" and simply describe to the jury the mathematical process of determining present value. The former practice, however, was not held to be reversible error.

 It seems quite clear to this court that plaintiff has failed to produce any theory by which the kind of actuarial testimony complained of is relevant to the measure of damages in an F. E. L. A. death action. It remains to be decided whether or not, though improper, the admission of this testimony over objection was reversible error.

As we have seen, the $320.93 figure represented decedent's gross monthly earnings less deductions for federal income tax, hospital insurance and railroad retirement. The record reveals that the average gross monthly earnings of decedent was approximately $360. Thus about $40 was deducted from decedent's monthly earnings in order to arrive at his net take-home pay of $320.93. In the Allendorf case, supra, an F. E. L. A. death action, the Illinois Supreme Court said at p. 181:

"Appellee also points out that the testimony of the actuary was needlessly favorable to defendant. Since the trial of the instant case this court has held in Hall v. Chicago & North Western Railway Co., 5 Ill.2d 135, 'that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation.' The trial court required the actuary to consider present value of future contributions after deduction of income tax. Plaintiff's attorney acquiesced in this ruling as well as the giving of instruction No. 27. The estimate of the actuary, by deducting income tax, was more than $10,000 less than it would be without such deduction."

The court also said at p. 178:

"Defendant argues that the amount spent on insurance premiums was not a contribution to Allendorf's dependents. The insurance was to go to his dependents upon his death and it gave them needed security to take care of such eventuality. In Chicago & North Western Railway Co. v. Curl, 178 F.2d 497, 502, it was held that sums paid for railroad retirement are not to be deducted in computing plaintiff's probable earnings for purposes of an F. E. L. A. action."

The clear implication of this language is that the deductions of income tax, insurance premiums and railroad retirement need not and, in fact, should not be brought to the attention of the jury. This being the case, decedent's gross monthly earnings, less his $40 per month personal expenses, would have been a proper figure for the jury's consideration. The figure of $320.93, while not arrived at in the proper manner, was approximately equal to decedent's gross earnings less personal expenses, and therefore could not be prejudicial. The fact is that in the light of the Allendorf

408

case, supra, the actuarial testimony in the instant case, taken as a whole, was "needlessly favorable" to the defendant. We are, therefore, unable to see wherein defendant was prejudiced.

■■ ■■ Defendant further contends that the verdict was grossly excessive and that certain of plaintiff's instructions contained reversible error. In the light of the actuarial testimony and the various elements that properly may be considered by the jury in this type of case, we cannot see wherein the verdict was grossly excessive. Many of the alleged errors in the instructions are based on alleged errors in the conduct of the trial which we have held not to be reversible. Instructions are to be regarded as a connected series, and it is sufficient if, as a whole, they correctly state the governing law. Bobalek v. Atlass, 315 Ill. App. 514. In so viewing these instructions we do not feel that they in anyway operated to the prejudice of the defendant.

Judgment affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.